Paul P. PYTLIK, Plaintiff–Appellant,

v.

PROFESSIONAL RESOURCES, LTD.; Halliburton Services; Halliburton Italiana s.p.a.; Halliburton Company; Insurance Company of North America, doing business as CIGNA, Defendants–Appellees.

No. 87–2869.

United States Court of Appeals, Tenth Circuit.

Oct. 10, 1989.

Ben A. Goff (Michael E. Warma with him on the brief), of Ben A. Goff, P.C., Oklahoma City, Okl., for plaintiff-appellant.

James T. Priest (Edward D. Hasbrook with him on the brief), of McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., for defendants-appellees Professional Resources, Ltd., Halliburton Services, Halliburton Italiana, s.p.a., and Halliburton Co.

Jack F. Gilbert (William G. Smith with him on the brief), of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendant-appellee Ins. Co. of North America.

**1374**

Before SEYMOUR, ANDERSON, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Paul Pete Pytlik (Pytlik) unsuccessfully brought suit based upon diversity for five claims related to his alleged wrongful discharge for initiating a workers' compensation claim. Pytlik's complaint alleges five separate causes of action without designating to which of the five defendants each claim applies. The defendants are: Professional Resources, Ltd. (PRL), a Bahamian corporation whose principal function is hiring third country nationals for Halliburton-related companies and which entered into a contract of employment with Pytlik; Halliburton Company, which operates the Welex division, an international well service company for which Pytlik contracted with PRL to work as an engineer while he was in Italy; Halliburton Italiana s.p.a. (Italiana), a Halliburton Company subsidiary organized under the laws of Italy and to which Pytlik was "seconded" for employment in Italy; Halliburton Services, a division of Halliburton Company that handles employee benefits; and Insurance Company of North America (INA), which provided liability insurance and voluntary workers' compensation benefit coverage to PRL and Halliburton Services companies.

· The first claim alleges Pytlik was wrongfully discharged for contacting an attorney about a potential workers' compensation claim in violation of Okla.Stat. title 85, §§ 5, 6 and 7 (Supp.1989). The second claim alleges Pytlik's employment contract was breached because his termination was pretextual and did not come within the early termination clause of the contract or an oral modification of the contract that extended its term to five years. The third claim alleges breach of the implied "covenant of good faith and fair dealing" by the defendants' misrepresentations regarding the proper venue of Pytlik's workers' compensation claim and by the Halliburton defendants' false reasons for his termination. The fourth claim alleges the defendants fraudulently induced Pytlik to enter into

the 1983 employment contract with PRL by misrepresenting Pytlik's future employment and the resolution of Pytlik's past complaints. The fifth claim alleges fraud and intentional infliction of emotional distress by virtue of unspecified defendants' misrepresentations concerning the jurisdiction of Pytlik's workers' compensation claim.

Pytlik appeals the orders of the United States District Court for the Western District of Oklahoma dismissing his claims against Italiana for lack of personal jurisdiction; entering summary judgment for INA on all claims; entering summary judgment for PRL, Halliburton Services, and Halliburton Company on his claims of breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent inducement, and intentional infliction of emotional distress; and directing a verdict at the conclusion of Pytlik's case for these defendants on his claim of wrongful discharge. We affirm in part and reverse in part and remand for new trial on the wrongful discharge claim.

On July 1, 1983, Pytlik, an English citizen, signed an employment contract with PRL to work in Italy as a Welex District Engineer for a period of two years. Pytlik was loaned or "seconded" immediately to work for Italiana. On December 7, 1983, Pytlik was injured in an automobile accident in Italy while he was allegedly acting in the course and scope of his employment for Italiana. During his convalescence, Pytlik received his regular wages, and his medical bills were paid in lieu of workers' compensation benefits. Complaint ¶ 4. Pytlik returned to work for Italiana in July 1984.

Under Pytlik's contract the Company[1] retained the right to designate which country's laws applied to govern workers' compensation. Appellant's Addendum, Exhibit 7 at 4. Pytlik sent letters to Halliburton Services in Duncan, Oklahoma, inquiring about the payment of certain medical bills and his workers' compensation rights. In

---

1. Under the contract the "Company" referred to Professional Resources, Ltd. unless Pytlik was "seconded" and then "as appropriate the term 'the Company' shall mean the said affiliate."

January 1985 Pytlik received a copy of a letter from INA to its claims service in Milan, Italy. The letter stated:

> It is our understanding that the claimant is from England (U.K.) and was injured on-the-job in Italy. This would make him a TCN [third country national] and covered under Oklahoma voluntary compensation. All of this information needs to be confirmed.
>
> Please contact the claimant as soon as possible and obtain all the medical information that you can....
>
>   \*    \*    \*    \*    \*    \*
>
> [G]et some idea from the claimant as to what he is looking for in the way of settlement.

Appellant's Addendum, Exhibit 46. In January 1985 Pytlik contacted a Texas attorney regarding his workers' compensation rights. Appellant's Addendum, Exhibit 52. In February 1985 Halliburton Services advised Pytlik that it could no longer contact him directly because he had retained an attorney to pursue a workers' compensation claim against Halliburton. On February 15, 1985, Pytlik's supervisor recommended Pytlik receive a merit pay increase and confirmed that Pytlik would receive his normal salary while undergoing additional surgery. Appellant's Addendum, Exhibits 55 and 57. Pytlik received a letter dated March 1, 1985, from the Welex division manager terminating his employment "[d]ue to a reduction in our workforce" and stating the reduction was in accordance with the terms of Pytlik's contract.[2] Appellant's Addendum, Exhibit 60. Pytlik received a second letter dated March 11, 1985, terminating his employment and indicating he should disregard the letter of termination dated March 1, 1985.[3] Appellant's Addendum, Exhibit 62.

Pytlik filed suit in federal district court in 1987. Upon motion, the district court dismissed defendant Italiana for lack of personal jurisdiction. The district court granted the motion of INA for summary judgment on all of Pytlik's claims. The district court granted summary judgment to the remaining defendants on claims two, three, four, and five. The first claim of wrongful discharge was presented to a jury. At the close of the plaintiff's case the defendants jointly moved for directed verdict on the first claim, which the district court granted. We now address each of the district court orders that Pytlik has appealed.

### I. Jurisdiction over Italiana

The district court dismissed Italiana for lack of personal jurisdiction. The district court found Pytlik's complaint failed to show Italiana had meaningful minimum contacts with Oklahoma necessary to impose jurisdiction. On appeal Pytlik contends that minimum contacts for the purpose of jurisdiction are established by the acts of Italiana's agent, Halliburton Services, in entering into a contract with Pytlik in Oklahoma. We disagree.

We review *de novo* a district court's ruling on personal jurisdiction. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988) (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)). The general test for personal jurisdiction is discussed in *Rambo.* In a diversity suit a federal court may exercise jurisdiction over a nonresident defendant if minimum contacts exist with the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 300, 100 S.Ct. 559, 581, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The sufficiency of the defendant's contacts are determined by considering

---

**2.** Pytlik's contract stated in pertinent part:

  The Company reserves the right to terminate this Agreement and dispense with my services at any time in the following cases: ... in the event of my misconduct, insubordination, incompetency, intoxication, commission of a felony or misdemeanor, or refusal to comply with the Company's rules and regulations ...

[or] if, in the sole judgment of the Company, it is advisable to do so on account of reduction in forces of the Company.... ·

Appellant's Addendum, Exhibit 7 at 3.

**3.** O. Poloni, a district manager of Halliburton (Italy), received copies of both letters.

whether the defendant has purposely availed itself of the privileges of conducting activities in the forum state. *Rambo*, 839 F.2d at 1417. In ascertaining the facts necessary to establish jurisdiction, the court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendant's affidavits. *Ten Mile*, 810 F.2d at 1524. All factual disputes are resolved in the plaintiff's favor.

■ In the complaint [4] Pytlik alleged: (1) Italiana "is a foreign corporation conducting business in the State of Oklahoma, as an affiliate of Halliburton, whose principal place of business is in Milano, Italy," Complaint ¶ 1; and (2) "[o]n July 21, 1983, the plaintiff entered into an employment contract in Duncan, Oklahoma, with the Defendants including Professional Resources, LTD and Halliburton Italiana s.p.a. as evidenced by Plaintiff's Exhibit A attached," Complaint ¶ 4. Italiana challenged these allegations in its motion to dismiss pursuant to Fed.R.Civ.P. 12(b). The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading. *Becker v. Angle*, 165 F.2d 140, 141 (10th Cir.1947).

■ Pytlik's complaint fails to allege any facts in support of its conclusory statement that Italiana is conducting business in Oklahoma. Nor does Exhibit A, the contract between Pytlik and PRL (attached to the complaint), support Pytlik's allegation that Italiana is a party to the contract. Italiana is not mentioned in the contract. Pytlik's response to the motion to dismiss does not contain additional facts that support jurisdiction. On appeal Pytlik argues Italiana need not be present in the state to establish jurisdiction if it derives some benefit from its agents acting within the state. However, Pytlik's complaint contains no factual allegations to support a finding that Italiana authorized agents to act in Oklahoma. An agent's authority to act cannot be established solely from the agent's actions; the authority must be established by an act of the principal. Restatement (Second) of Agency § 27 (1958). All of Pytlik's allegations of authority rely on PRL's acts rather than the acts of Italiana. Pytlik has failed to make a *prima facie* showing of personal jurisdiction over Italiana. The district court's order dismissing Italiana is affirmed.

## II. Summary Judgment for INA

■ INA provided liability insurance and voluntary workers' compensation benefit coverage to PRL and Halliburton Services at the time of Pytlik's accident. The district court granted INA's motion for summary judgment on all of Pytlik's claims. It found Pytlik failed to present evidence sufficient to establish the elements of fraud and that INA could not be found liable for damages flowing from Pytlik's dismissal by Halliburton. On appeal Pytlik asserts the district court erred in granting the summary judgment because Pytlik established INA participated in the misrepresentation of Pytlik's workers' compensation rights. However, Pytlik failed to allege any material issues of fact remaining in dispute, nor does he assert the district court applied the wrong law.

We review *de novo* the granting of a motion for summary judgment under the same standard employed by the district court under Fed.R.Civ.P. 56(c). *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). If there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). "The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment, and the court must review the record in the light most favorable to the opposing party." *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987). If a nonmoving party makes some showing on a material issue, we must consider the applicable standard of proof to determine whether the showing is sufficient for a reasonable trier

---

4. Pytlik failed to designate the complaint as part of the record. We have supplemented the record with the complaint pursuant to 10th Cir.R. 11.1.1.

of fact to find for the nonmoving party on that issue. Should the nonmoving party not make a sufficient showing on any essential element of his case, all other facts are rendered immaterial, and summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

We have reviewed the record [5] in a light most favorable to Pytlik and affirm the district court's grant of summary judgment to defendant INA for substantially the same reasons set out in the district court's Order of November 12, 1987. The general thrust of that order is that no evidence exists to support any of Pytlik's allegations and the January 1985 letter from INA to Pytlik provides no basis for a cause of action.

### III. Summary Judgment on Claims Two, Three, Four and Five

The district court granted a motion for summary judgment to PRL, Halliburton Services, and Halliburton Company (defendants) on Pytlik's second, third, fourth and fifth claims for relief, which allege claims for breach of contract, breach of implied covenant of fair dealings, fraudulent inducement, and intentional infliction of emotional distress, respectively. Pytlik asserts the district court erred. We review each claim in sequence under the standard for summary judgments outlined in Section II, *supra.*

### A.

■ The second claim for relief for breach of contract alleges the defendants terminated the contract before the expiration of its five-year term and on a pretextual basis not recognized by the contract. On appeal Pytlik does not argue, as he did at trial, that the defendants modified the written contract's term by their representations to the Italian government. Rather, he asserts that the contract provision allowing early termination for reduction in force was used as a pretext for his discharge and that this provision is against public policy.

He contends the district court erred in holding that no question of fact existed concerning the reason for his discharge.

As to whether Pytlik's discharge was pretextual and not within the termination provisions of the contract, the district court determined that, "[w]hile a disputed question of the Italian company's economic status bars summary judgment on the first claim (wrongful discharge), such a bar does not exist here. The written contract gave the employer, and no one else, the sole judgment of whether a reduction in force was warranted." Order Granting Partial Summary Judgment dated November 10, 1987, at 5. *Hinson v. Cameron,* 742 P.2d 549, 554 (Okl.1987), holds that, even assuming a covenant of fair dealing and good faith exists in at-will employment relationships, that covenant does not bar the termination of an at-will employment relationship except for good cause. Except as provided by Okla.Stat. tit. 85, §§ 5 through 7 (not applicable to this claim), an at-will employee in Oklahoma has no cause of action against his employer for wrongful discharge. *Ingram v. Oneok, Inc.,* 775 P.2d 810, 814 (Okl.1989). Given that the reduction in forces provision could be exercised by the company at its discretion, without cause, we affirm the grant of summary judgment on this breach of contract claim.

### B.

Pytlik's third claim for relief alleged the defendants breached an implied covenant of fair dealing by terminating his contract before its minimum term had expired and by giving false reasons for the termination. The district court ruled the third claim has no basis in Oklahoma law, relying on *Hinson.* On appeal Pytlik contends the district court misconstrued *Hinson.* Pytlik asserts the contract term, which allows the defendants to terminate Pytlik as part of a reduction in forces deemed necessary in the employer's sole discretion, is a violation of public policy. We are not persuaded by Pytlik's argument.

---

5. Pursuant to 10th Cir.R. 11.1.1, we have supplemented the record with Plaintiff's response and brief in support of his objections to the defendant INA's motion for summary judgment.

■ The public policy analysis in *Hinson* was considered in connection with the claim of wrongful discharge, 742 P.2d at 552–53, not the claim of breach of implied covenant of good faith, 742 P.2d at 553–54. The court in *Hinson* rejected the plaintiff's cause of action for breach of the implied covenant of good faith based on an employer's bad-faith termination of an at-will employee. *See also Burk v. K–Mart Corp.*, 770 P.2d 24, 27 (Okl.1989). Pytlik's contract provision, which allows the company to terminate the contract at its sole discretion as part of a reduction in forces creates, in essence, at-will employment. We agree with the district court's decision holding Oklahoma does not recognize a cause of action for breach of the covenant of good faith when an employer exercises, allegedly in bad faith, a contract provision left to its sole discretion.

■ Pytlik also asserts the third claim for relief sets out a claim for breach of contract because the reduction in forces provision violates public policy as a matter of law. Oklahoma recognizes that the termination of an at-will employee in contravention of a clear mandate of public policy is a tortious breach of contractual obligations. *Burk*, 770 P.2d at 29. However, the reduction in forces provision does not come within any of the definitions of public policy listed in *Hinson*.[6] The third claim thus fails to state a claim for tortious breach of contract. Accordingly, we affirm the district court's grant of summary judgment on the third claim for relief.

### C.

■ The fourth claim alleges the defendants fraudulently induced Pytlik not to pursue his 1980 claims for breach of contract "in reliance on the 1983 contract." Pytlik alleges the defendants misrepresented the length of the 1983 contract and never intended to perform it. The district court found the only representations made prior to the signing of the contract were statements that Pytlik was going to Italy, that there would be no problems, and that he would be taken care of and would be able to work as long as he wanted. II R., Exhibit J, Pytlik Deposition. The district court held Pytlik failed to establish the elements of fraud by clear and convincing evidence.

■ To establish fraud Pytlik must show: (1) a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that Pytlik would rely on it; and (4) reliance and resulting damage. *D & H Co., Inc. v. Shultz*, 579 P.2d 821 (Okl.1978). If the nonmoving party fails to make a sufficient showing on any essential element of his case, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We agree with the district court that the alleged statements are not material misrepresentations that support a claim of fraudulent inducement. We affirm the district court's grant of summary judgment on the fourth claim for relief.

### D.

Pytlik's fifth claim for relief alleges the defendants intentionally inflicted emotional distress on Pytlik by their acts of fraudulently representing the jurisdiction of his workers' compensation claim, by misrepresenting the name of his employer, and by inducing him to believe his workers' compensation claim was controlled by Oklahoma law and then contesting the court's jurisdiction. In responding to the motion for summary judgment Pytlik stated these additional facts were in controversy:

> That spreading confusion, unnecessarily delaying the election required by contract as to the jurisdiction and non-payment of medical expenses are not the basis of a claim for emotional distress. Further, the unlawful termination of the

---

**6.** In *Hinson* the court states public policy is violated when dismissal is for "(a) refusing to participate in an illegal activity; (b) performing an important public obligation; (c) exercising a legal right or interest; (d) exposing some wrongdoing by the employer; and (e) performing an act that public policy would encourage or, for refusing to do something that public policy would condemn." 742 P.2d at 552–53 (citations and footnotes omitted).

employment contract while the Plaintiff was in the hospital is in it's self a basis for emotional distress.

I R. tab 48 at 5.

Under Oklahoma law the trial court is given the initial responsibility "to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the ... standards [of a cause of action for intentional infliction of emotional distress]. Only when it is found that reasonable men would differ in an assessment of this critical issue may the tort-of-outrage claim be submitted to a jury." *Eddy v. Brown*, 715 P.2d 74, 76–77 (Okl.1986). To recover for intentional infliction of emotional distress under Oklahoma law, Pytlik must prove that defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to him. *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1376 (Okl.1978) (quoting Restatement (Second) of Torts § 46, comment b (1965)). The district court granted summary judgment on the fifth claim, holding not only that Pytlik had failed to make the necessary showings of intent, outrageousness, or injury, but that the claim was wholly without a factual basis.

On appeal Pytlik asserts the district court erred in dismissing his claim for emotional distress. Pytlik states: "Evidence was presented which tended to show that Mr. Pytlik did sustain emotional distress in the breach of contract which resulted in the infliction of emotional distress." Appellant's Brief at 29. In his complaint Pytlik alleged the defendants caused him emotional distress by misrepresenting the jurisdiction of his workers' compensation claim as Oklahoma in the INA letter of January 9, 1985; by misrepresenting the name of his employer; and by inducing him to believe Oklahoma had jurisdiction over his workers' compensation claim, but that his claim was time-barred and the Oklahoma Workers' Compensation Court did not have jurisdiction over it. The defendants challenged these allegations in their motion for summary judgment. The district court found no factual support for Pytlik's allegations and concluded they fail to present a claim for emotional distress. District Court Order, November 10, 1987, at 7–9. We agree. However, the district court's order fails to address the contested facts alleged in Pytlik's response to the motion for summary judgment.[7]

After reviewing Pytlik's response to the motion for summary judgment and the record in a light most favorable to Pytlik, we cannot say the defendants' conduct was so extreme and outrageous as to justify submission of Pytlik's claim to the jury. In *Eddy* the Oklahoma Supreme Court affirmed the district court's summary judgment on the plaintiff's claim of intentional infliction of emotional distress even though the plaintiff alleged (1) the defendant did not efficiently handle his workers' compensation claim; (2) the defendant turned down his claim of payment for accrued vacation in lieu of taking time off from work; (3) the defendants harassed him while he was on sick leave; and (4) his employment was terminated while he was on sick leave with a back injury. *Eddy*, 715 P.2d at 76. The allegations in *Eddy* are sufficiently analogous to Pytlik's allegations in his response to the motion for summary judgment that we believe an Oklahoma court would not regard the defendants' alleged conduct as so extreme and outrageous as to justify submission of Pytlik's claim to the jury.

The allegation that Pytlik was unlawfully terminated while in the hospital is no more than a claim he was fired without good cause and as a result suffered emotional distress. This allegation does not support a claim for intentional infliction of emotional distress. *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir.1984). We do not find extreme and outrageous the allegation the defendants

---

**7.** In his response to the defendants' motion for summary judgment on the claim for emotional distress, Pytlik asserted there were facts in controversy regarding the defendants' delayed election of the jurisdiction of his workers' compensation coverage, failure to pay some medical expenses, and the termination of his employment while he was in the hospital.

delayed in electing a jurisdiction to control workers' compensation coverage in light of the allegation in the complaint that the defendants provided plaintiff with medical care and paid his salary in lieu of workers' compensation benefits. The bare allegation of nonpayment of medical expenses without description of the surrounding circumstances does not state conduct so extreme and outrageous as to justify submitting this claim to the jury. We affirm the district court's grant of summary judgment on the fifth claim for relief.

## IV. Directed Verdict on Wrongful Discharge Claim

Pytlik's first claim for relief alleged the defendants violated the Oklahoma Retaliatory Discharge Act, Okla.Stat. title 85, §§ 5 and 6 (Supp.1989),[8] when they terminated him for instituting proceedings under the Act. The defendants moved for summary judgment on this claim, and their motion was denied. The first claim was presented to a jury. At the conclusion of the plaintiff's case the defendants jointly moved for directed verdict. The district court granted the motion. Pytlik appeals.

■■■ In their brief on appeal the defendants assert the district court was without jurisdiction to try the wrongful discharge action under Okla.Stat. title 85, §§ 5 and 6 because there was no jurisdictionally valid workers' compensation claim to support Pytlik's cause of action. Because federal courts have limited subject matter jurisdiction, we may review the district court's exercise of jurisdiction although the defendants have not raised the issue by cross appeal. *Koerpel v. Heckler*, 797 F.2d 858,

861 (10th Cir.1986). Pytlik filed a workers' compensation claim in the Oklahoma Workers' Compensation Court in January 1986. That court found it had no jurisdiction to award compensation because Pytlik signed his contract of employment in London, England, and the accident did not occur in Oklahoma. II R., Exhibit H. The defendants contend this finding of no jurisdiction defeats a prerequisite of a claim for retaliatory discharge, i.e., that "the employee has in good faith filed a claim." Okla.Stat. title 85, § 5. The defendants concede a successful workers' compensation claim is not a prerequisite to an action based on Okla.Stat. title 85, §§ 5 and 6. Appellees' Brief at 22. We are not persuaded that Pytlik's unsuccessful attempt to establish jurisdiction in Oklahoma for his workers' compensation claim defeats his claim for retaliatory discharge.

■■■ We review the grant of a directed verdict *de novo*, and apply the same standard used by the district court. *Guilfoyle v. Missouri, Kansas & Texas R.R. Co.*, 812 F.2d 1290, 1292 (10th Cir.1987). "That standard requires us to determine whether, viewing the evidence in the light most favorable to the nonmoving party, the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion." *Id.* A directed verdict may be entered only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the party opposing the motion would be improper. *Peterson v. Hager*, 724 F.2d 851, 853–54 (10th Cir.1984).

In *Buckner v. General Motors Corp.*, 760 P.2d 803 (Okl.1988), the court discusses

---

8. Okla.Stat. title 85, § 5 (Supp.1989) provides:

No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be required to rehire or retain any employee who is determined physically unable to perform his assigned duties.

Okla.Stat. title 85, § 6 (Supp.1989) provides:

Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00). The burden of proof shall be upon the employee.

the elements of a *prima facie* case for retaliatory discharge and states:

> The discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and *consequent* termination of employment. After a prima facie case is established, the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason....
>
> \*   \*   \*   \*   \*   \*
>
> The alternative requisites for stating a prima facie case for retaliatory discharge pursuant to 85 O.S.1981 § 5 are that the employee has in good faith either filed a claim, retained a lawyer, in good faith instituted or caused to be instituted any proceeding under the provisions of 85 O.S.1981 § 5, or has testified or is about to testify in such proceedings.

760 P.2d at 806, 807–08 (emphasis in original).

In light of the elements of a *prima facie* case as discussed above, we consider the evidence Pytlik presented during the jury trial in support of his claim of wrongful discharge. Pytlik was employed by PRL in July 1983 to work as a Welex District Engineer in Italy. Tr. at 27. On December 7, 1983, he was injured in an automobile accident during the course and scope of his employment. Tr. at 33–34. He was hospitalized and recuperated for several months. Halliburton continued to pay Pytlik's salary and medical expenses while he recuperated. Tr. at 34–36. Halliburton's insurance carrier, for nonoccupational injuries, turned down Pytlik's claim. Appellant's Addendum, Exhibit 47. Pytlik corresponded with Benson, in-house counsel for Halliburton Services, regarding workers' compensation benefits and submission of his claim to the workers' compensation carrier.

Appellant's Addendum, Exhibits 32, 25 and 47.

During this time Pytlik received two employee evaluations, one in October 1984 and one in January 1985, from his supervisor Atkins indicating his work was satisfactory to better than satisfactory. Tr. at 39–40, 49–50. The January evaluation indicated "Paul [Pytlik] has continued in establishing excellent relationships with AGIP and other Clients in Italy. This effort is now reflected in increased workload for EWS Italy." Appellant's Addendum, Exhibit 43. On February 15, 1985, Atkins requested a salary increase for Pytlik. Tr. at 58–59, Appellant's Addendum, Exhibit 55. Atkins made arrangements with Poloni,[9] the Halliburton district manager, for the continuation of Pytlik's salary while he received additional surgery. Tr. at 59, Appellant's Addendum, Exhibit 57. Pytlik left for surgery in France on February 26, 1985. Tr. at 66.

In January 1985 Pytlik contacted a Houston attorney to pursue his rights under the workers' compensation laws. On or about February 12, 1985, Benson was contacted by Pytlik's attorney and informed he would be handling Pytlik's workers' compensation claim. Tr. at 140–41. Benson sent a letter to Pytlik to confirm the representation by an attorney and to stop all informal contacts. Benson sent a copy of the letter to Mike Kirkland, the Welex division manager. Appellant's Addendum, Exhibit 52. Kirkland contacted Benson on February 25, 1985, to discuss terminating Pytlik for unsatisfactory work. Tr. at 114–15, 144–45. Benson advised Kirkland to document the grounds for termination in writing to Pytlik. On March 1, 1985, Kirkland wrote Pytlik a letter terminating his employment due to a reduction in the work force in Italy. Appellant's Addendum, Exhibit 60. A copy of the letter was sent to Poloni, the district manager for Halliburton. Pytlik did not receive this letter, due to his hospitalization, until after his termination by Atkins, Pytlik's immediate supervisor for Welex/Halliburton Italiana. Tr. at 62. On

---

9. Before Pytlik's accident and his replacement by Atkins, Pytlik was the Welex District Engineer for Italy and he answered to Poloni. Tr. at 69, 82–83.

**1382**

March 11, 1985, Atkins sent Pytlik a letter terminating his employment due to reduction in the workforce in Italy, and copies of the letter were sent to Poloni and Kirkland. Appellant's Addendum, Exhibit 62.

When Pytlik was released from the hospital at the end of April 1985, he returned to Italy to finish business. Tr. at 63. Pytlik met Atkins for lunch. Pytlik testified Atkins, his supervisor, "seemed to be under the impression that I had already instigated some legal proceedings, and he told me that the Halliburton attorneys were not very happy with what was happening." Tr. at 64. Pytlik also met with Poloni, the district manager, who said "it was very unfair that [Pytlik] should be terminated just because [he] asked for advice from a lawyer." *Id.* Within two months of Pytlik's termination, another engineer was transferred to Italy to perform Pytlik's job. Tr. at 71–72.

Although contested, this evidence considered in a light most favorable to Pytlik establishes a *prima facie* case of retaliatory discharge. Poloni's statement that Pytlik was fired for hiring an attorney establishes the nexus between Pytlik's termination and his hiring of an attorney to pursue his workers' compensation claim. See *Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 464 (Okl.1987) (Thompson's claim of retaliatory discharge was rejected because he did not "even allege that his supervisors or others at any time made any reference regarding termination as a result of bringing the Workers' Compensation action"). We cannot say the evidence is so patently in favor of the defendants that a jury verdict in favor of Pytlik would be improper.

The district court order granting the defendants' motion for directed verdict is REVERSED and the case is REMANDED for a new trial.