945 F.2d 411
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Danny COOPER, Plaintiff-Appellant,
v.
SCHNEIDER METAL MANUFACTURING CO. and Cornelius Company,
Defendants-Appellees.
 No. 90-1158.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 26, 1991.
 
 Before JOHN P. MOORE, SETH and STEPHEN H. ANDERSON, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 Appellant Danny Cooper commenced this action against his former employer, Schneider Metal Manufacturing Co., and its parent company, Cornelius Company (collectively referred to as Schneider Metal), in state court, asserting various causes of action in relation to the termination of his employment. Schneider Metal removed the case to federal court based upon diversity jurisdiction. Upon removal, appellant tailored his claims to: (1) intentional infliction of emotional distress; (2) breach of implied contract; (3) breach of express contract; and (4) wrongful retaliation for filing a workmen's compensation insurance claim. The district court granted a directed verdict in favor of Schneider Metal as to the intentional infliction of emotional distress and the wrongful retaliation claims. The two claims based on contract theories were submitted to the jury and ultimately denied.
 
 
 2
 Appellant appeals the district court's decision granting the directed verdicts in favor of Schneider Metal. He also appeals the district court's refusal to submit the claim of fraudulent misrepresentation to the jury. For the reasons that follow, we affirm the district court's rulings.
 
 
 3
 Viewing the evidence in the light most favorable to appellant, as we must, the following events occurred in relation to this appeal. Appellant began working for Schneider Metal in March 1980. During the following years, he was promoted to the position of area sales manager. This position required that he travel approximately three weeks out of every month. While on a business trip in June 1986, appellant became ill and suffered a brain aneurysm upon returning home. The aneurysm and accompanying surgery resulted in a stroke which caused paralysis.
 
 
 4
 At trial, appellant testified that James Tjaden, appellant's immediate supervisor at Schneider Metal, visited him in the hospital. During this visit, appellant testified that Tjaden said "Dan, everything is going to be all right, going to be fine." "Don't worry about your job. Your job's secure. The main thing you have to concern yourself with is get well." Tr.Vol. IX, at 67-68. Appellant alleged that similar statements were repeated by Tjaden to him and other members of his family during the course of the next two years. The thrust of appellant's case focuses on these statements.
 
 
 5
 Because of appellant's paralysis, he was unable to perform his normal duties of traveling three weeks out of every month; however, he did maintain contact with his clients by telephone and correspondence through his office at home. During the following two years, appellant was kept on Schneider Metal's employment rolls as an inactive, disabled employee. He received disability payments from Schneider Metal's insurance carrier and the Social Security Administration.
 
 
 6
 Approximately six months after his aneurysm, Schneider Metal reorganized its sales force and eliminated appellant's previous position. In an attempt to place appellant within the company, Schneider Metal created the position of Cornelius products coordinator specifically for appellant. He initially accepted the position but did not take the job when he learned that his social security benefits would be in jeopardy. Six months later, he decided to take the job; however, the position was no longer viable given the dwindling product line.
 
 
 7
 At that time, Tjaden encouraged appellant to look at other job possibilities in the Denver area. Although appellant denies that this conversation occurred, he did send out approximately fifty letters inquiring about future employment opportunities with other companies.
 
 
 8
 Schneider Metal also wanted to offer appellant a position as regional manager. Before extending the position to appellant, however, Schneider Metal requested that appellant obtain a release from his doctor. It was Dr. Krauth's opinion that the extensive amount of travel required of the position would be unsafe to appellant and others; therefore, appellant was not given the job. Upon receipt of Dr. Krauth's letter dated July 31, 1987, Tjaden advised appellant that he was no longer to incur expenses working from his home.
 
 
 9
 On May 4, 1988, Dr. Krauth stated in a letter that "Mr. Cooper has reached maximum medical improvement at this time and that he is still significantly disabled because of a stroke resulting from his ruptured aneurysm." Vol. IX, at 169. Sometime during May 1988, appellant filed for workmen's compensation benefits. Due to economic hardship, Schneider Metal was forced to reduce the number of employees employed at the company. Schneider Metal requested that Tjaden discharge approximately five to seven individuals from his division. During August, Tjaden terminated five individuals including appellant.
 
 
 10
 After the presentation of plaintiff's case, Schneider Metal moved for a directed verdict on all claims. The district court ruled that as a matter of law there was no evidence to support the claim of emotional distress and granted a directed verdict in favor of Schneider Metal. As to the retaliatory discharge and contract claims, the district court reserved its ruling.
 
 
 11
 At the close of the evidence, Schneider Metal renewed its motion for a directed verdict. The district court directed a verdict on the retaliatory discharge claim but permitted the contract claims to go to the jury. After deliberating, the jury returned a verdict in favor of Schneider Metal on the contract claims.
 
 
 12
 Appellant challenges the district court's decision granting directed verdicts in favor of Schneider Metal on the intentional infliction of emotional distress and retaliatory discharge claims. We review a ruling on a directed verdict motion de novo. Hill v. Goodyear Tire & Rubber, Inc., 918 F.2d 877, 880 (10th Cir.). When reviewing a directed verdict in a diversity case, we apply
 
 
 13
 " 'the federal standard in determining whether the evidence is sufficient to go to the jury or, as a matter of law, the court should direct a verdict. Under the federal standard, the trial court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the party against whom the motion is directed. When the evidence is so viewed, a directed verdict is proper only when the evidence is so patently in favor of the moving party that a jury verdict in favor of the opposing party would be improper and would have to be set aside by the trial judge.
 
 
 14
 " 'While the sufficiency of the evidence is tested against the federal standard, the underlying cause of action in a diversity case is governed by state law.' "
 
 
 15
 Wilson v. State Farm Mut. Auto. Ins. Co., 934 F.2d 261, 264 (10th Cir.) (quoting Peterson v. Hager, 724 F.2d 851, 853-54 (10th Cir.)). In this case, Colorado law is applicable.
 
 
 16
 First, we address appellant's contention that the district court erred in directing a verdict in favor of Schneider Metal on his claim of intentional infliction of emotional distress caused by outrageous conduct. Under Colorado law, the conduct must be:
 
 
 17
 " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' "
 
 
 18
 Churchey v. Adolph Coors Co., 759 P.2d 1336, 1350 (Colo.) (quoting Rugg v. McCarty, 476 P.2d 753, 756 (Colo.)) (quoting Restatement (Second) of Torts § 46 comment d (1965)). In assessing claims of outrageous conduct, the jury determines the ultimate question of whether the conduct is outrageous, "but the trial court decides whether the issue should be submitted to the jury in the first instance, based on whether reasonable persons could differ on the conduct being outrageous." Montgomery Ward & Co. v. Andrews, 736 P.2d 40, 46 (Colo.App.) (citations omitted). Where the conduct is not sufficiently atrocious as to permit recovery, the claim is properly dismissed. See Therrien v. United Air Lines, Inc., 670 F.Supp. 1517, 1524 (D.Colo.).
 
 
 19
 In this instance, the district court determined that the evidence was insufficient to submit the issue of outrageousness to the jury and directed a verdict in favor of Schneider Metal. Appellant claims that this was error because a reasonable jury could have found Schneider Metal's conduct to be outrageous based upon the following events: Schneider Metal knew that appellant was disabled and that a termination without warning would come as a special blow; Schneider Metal repeatedly made promises that his job was secure in an effort to keep him out of the job market and prevented him from getting a job elsewhere because of the non-compete agreement; Schneider Metal benefitted from his work at home; and Schneider Metal fired him for filing the workmen's compensation claim.
 
 
 20
 While Colorado law has recognized that outrageous conduct may occur in an employment situation, Churchey, 759 P.2d at 1350, we do not believe that the facts as presented were sufficient to submit an intentional infliction of emotional distress claim to the jury. Appellant essentially is claiming that Schneider Metal breached its contract with him by stringing him along and then discharging him. Appellant's claim is not supported in law or in fact.
 
 
 21
 Colorado law is clear that an allegation by an employee that he was dismissed or that his employer breached its contract does not set forth a claim for intentional infliction of emotional distress. See Churchey, 759 P.2d at 1350; Therrien, 670 F.Supp. at 1524, and the cases cited therein.
 
 
 22
 Furthermore, a review of the record reveals that none of appellant's allegations are supported by the record. Appellant's claim that the termination occurred without warning is contrary to the evidence presented at trial. Appellant testified that he thought he better start "seriously investigating opportunities" when the two positions with Schneider Metal fell through. He also testified that he did not interpret Tjaden's statements as an absolute guarantee of employment. He believed that Tjaden had the right to terminate him if he did not perform his job functions. Further, on two separate occasions, his doctor refused to sign a release recommending that he return to work in his previous capacity as a traveling salesman with Schneider Metal. We fail to see how his termination could have come as a great surprise to appellant.
 
 
 23
 Appellant's claim that Schneider Metal attempted to keep him out of the job market by making promises of job security and by enforcing the non-compete agreement is not supported by the record. The non-compete agreement provided that appellant was not to accept employment with a competitor for 18 months after his employment with Schneider Metal ceased. The agreement provided that if appellant wanted to accept employment with a competitor, he was to tender a written statement to Schneider Metal informing it of his desire to work for another company. If appellant could not find work because of the agreement, Schneider Metal agreed to pay him for the months that he could not work. After his termination, appellant sent out approximately fifty letters inquiring about future employment with various companies. At trial, appellant testified that he did not receive any firm offers and did not have the opportunity to invoke the non-compete agreement. The only time he was offered a position with another company was prior to his termination. Appellant alleged that he was prevented from obtaining a position because of the non-compete agreement; however, he did not invoke the non-compete agreement at that time either. Schneider Metal not only attempted to place appellant in positions within the company but encouraged him to seek employment elsewhere.
 
 
 24
 Appellant's claim that Schneider Metal benefitted from the work that he performed at home is easily disposed of given the jury's resolution of the contract claims. The jury explicitly rejected appellant's claim that there was a promise concerning his employment or that Schneider Metal was unjustly enriched.
 
 
 25
 Appellant's claim that he was fired for filing a workmen's compensation claim is a serious allegation. However, he confuses the emotional distress claim with a claim of wrongful retaliation. We do not believe that such an allegation rises to the level of outrageous conduct. See Grandchamp v. United Air Lines, Inc., 854 F.2d 381, 385-86 (10th Cir.) (claim of age discrimination will not support a claim of outrageous conduct). Such a claim is properly framed in the retaliatory discharge claim which is addressed below.
 
 
 26
 We find that the facts presented were insufficient to create liability on Schneider Metal for a claim of emotional distress stemming from outrageous conduct and that the district court properly removed the issue from the jury's province.
 
 
 27
 Appellant also challenges the district court's decision to grant a directed verdict in favor of Schneider Metal on the retaliatory discharge claim. He claims that his termination was in retaliation for filing a claim for workmen's compensation. Schneider Metal claims that the combination of appellant's inability to travel and the reduction of Schneider Metal's work force led to the termination of appellant's employment.
 
 
 28
 In Lathrop v. Entenmann's, Inc., 770 P.2d 1367, 1372-73 (Colo.App.), the Colorado Court of Appeals recognized retaliation for filing a workmen's compensation claim as a cause of action. While the Lathrop decision failed to set out the elements necessary to establish the claim, it is clear that in order to fall within the public policy exception to the employment at-will doctrine, the terminated employee must show "that he was discharged for exercising a specifically enacted right or duty." Cronk v. Intermountain Rural Elec. Ass'n., 765 P.2d 619, 622 (Colo.App.). In this case, the specifically enacted right is the filing of a workmen's compensation claim. Because Colorado law is silent on the elements and burdens applicable to retaliatory discharge cases, we must predict how the Supreme Court of Colorado would rule. Weiss v. United States, 787 F.2d 518, 525 (10th Cir.).
 
 
 29
 In Pytlik v. Professional Resources, Ltd., 887 F.2d 1371 (10th Cir.), we applied Oklahoma law to a claim of retaliatory discharge. To establish a prima facie case of retaliation under Oklahoma law, " '[t]he discharged employee must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted, or caused to be instituted, proceedings under the Act, and consequent termination of employment.' " Id. at 1381 (quoting Buckner v. General Motors Corp., 760 P.2d 803, 806 (Okl.)) (emphasis in original).
 
 
 30
 The ultimate burden of persuasion remains with the employee. Once the employee establishes a prima facie case, however, the burden of production shifts to the employer to articulate a legitimate non-retaliatory reason for the discharge. Buckner, 760 P.2d at 806. Thereafter, the employee bears the burden of persuading the court that the reason given was pretextual. Id.
 
 
 31
 Applying these principles to the facts before us, we conclude that the district court's directed verdict on the retaliation claim was proper. It is undisputed that appellant was employed by Schneider Metal; he suffered an injury while on the job; he filed a workmen's compensation claim; and he was subsequently terminated. Because appellant established a prima facie case, the burden of production shifted to Schneider Metal to articulate a legitimate non-retaliatory reason for the termination.
 
 
 32
 At trial Schneider Metal offered two reasons for appellant's termination. The primary reason offered for appellant's discharge was that he was unable to perform the job duties. Prior to suffering the aneurysm, appellant traveled approximately three weeks out of every month. After the aneurysm, appellant's doctor placed restrictions on appellant and did not recommend that he return to work in his previous capacity. The positions which Schneider Metal attempted to place appellant in required an extensive amount of travelling which his doctor deemed as unsafe for appellant.
 
 
 33
 The second reason offered by Schneider Metal for appellant's discharge was the reduction in its work force. At the time that appellant was terminated, Schneider Metal was facing economic hardship and was forced to restructure the company. During this time, Tjaden not only terminated appellant but four other employees from his division as well.
 
 
 34
 The record amply supports Schneider Metal's position that appellant was terminated for legitimate non-retaliatory reasons. Appellant was unable to establish that the reasons set forth by Schneider Metal were pretextual. While appellant claims that he could perform the job, this argument is inconsistent with his disability claim and with the recommendation from his doctor. An employee's inability to perform the work required of the position is a legitimate reason and not pretextual. Buckner, 760 P.2d at 806-07; Elzey v. Forrest, 739 P.2d 999, 1003 (Okl.).
 
 
 35
 Regardless of whether Colorado would apply the same principles as set forth in Buckner, it is clear that Schneider Metal articulated legitimate non-retaliatory reasons for appellant's discharge. Appellant was unable to establish that these reasons were pretext; therefore, he failed to meet his burden of persuasion. The district court properly removed the claim of retaliatory discharge from the jury's province.
 
 
 36
 At the close of the evidence, appellant tendered an instruction on fraudulent misrepresentation. Schneider Metal objected to the jury receiving such an instruction because the claim was not alleged in the complaint. Appellant argued that although it was not specifically pled, the elements were in the complaint.
 
 
 37
 The district court refused to read the instruction to the jury on two grounds. First, the claim had not been pled in the complaint or mentioned in the pretrial order. Second, the district court did not believe that such a claim was viable given the facts of the case. Appellant contends that the district court's refusal to instruct the jury on a fraudulent misrepresentation claim was error. We disagree.
 
 
 38
 First, appellant had numerous opportunities to specifically assert the claim and failed to do so. A review of the record reveals that appellant experienced great difficulty in crafting a clear and concise complaint. After considerable discussion and redrafts, appellant presented a second amended complaint which was filed with the court. There were also numerous modifications on the pretrial order. The fraudulent misrepresentation claim was not specifically alleged in any of the documents filed with the court.
 
 
 39
 Second, any error in failing to submit a claim of fraudulent misrepresentation was harmless given the jury's ultimate resolution of the case. See Dixon v. City of Lawton, Okl., 898 F.2d 1443, 1449 (10th Cir.). Under Colorado law, to establish a claim of fraudulent misrepresentation, appellant was required to show that: (1) the defendant made a false representation of a material fact; (2) the defendant made the representation knowing that it was false; (3) the defendant made the representation knowing that it would be relied upon; (4) the statement was relied upon; and (5) reliance on the representation caused damages. Club Valencia Homeowners v. Valencia Assoc., 712 P.2d 1024, 1026-27 (Colo.App.).
 
 
 40
 In support of his argument, appellant claims that Schneider Metal knowingly made false statements of promised employment; Schneider Metal knew that appellant would rely on the statements; appellant did rely on the statements; and due to his reliance, appellant did not seek other job opportunities.
 
 
 41
 By rejecting appellant's contract claims, the jury apparently concluded that there were no express guarantees of employment or unjust enrichment. We must conclude that this same reasonable jury would have rejected the misrepresentation claim as well.
 
 
 42
 Contrary to appellant's claims, the evidence presented did not bear out an elaborate scheme of deception. Schneider Metal, through Tjaden, told appellant that he should concentrate on getting well and not worry about his job. Schneider Metal worked with appellant for over two years in a good faith effort to place him in a position within the company. After several failed attempts, Schneider Metal encouraged him to seek employment elsewhere.
 
 
 43
 At trial, appellant testified that he did not interpret the statements made by Tjaden to mean that his job was absolutely guaranteed. He also testified that he was concerned about his future employment with Schneider Metal after two jobs fell through. During this time, he was actively sending out letters inquiring about future employment with other companies. Tjaden's statements did not cause appellant to miss out on other employment because there was simply no reliance on those statements by appellant. We find that the evidence presented did not establish a viable claim of fraudulent misrepresentation.
 
 
 44
 Appellant raises additional arguments relating to the issue of damages. While we have considered those arguments, we do not reach them given our disposition above. See Nesbit v. City and County of Denver, 539 P.2d 509, 510 (Colo.App.).
 
 
 45
 Accordingly, the decision of the district court for the District of Colorado is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3