Dan CANTRELL and Larry Holt,
Plaintiffs–Appellants,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 2021, Defendant–Appellee.

No. 92–6337.

United States Court of Appeals, Tenth Circuit.

Aug. 9, 1994.

**466**

Steven M. Angel, Oklahoma City, OK, for plaintiff-appellant.

Loren Gibson (George J. McCaffrey with him on the brief), of Lampkin, McCaffrey & Tawwater, Oklahoma City, OK, for defendant-appellee.

Before TACHA, Circuit Judge, BARRETT, Senior Circuit Judge, and KANE, Senior District Judge.*

---

* The Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado,

KANE, Senior District Judge.

Appellants, Dan Cantrell and Larry Holt, appeal an order granting summary judgment to the Defendant Union. They brought this suit under § 301 of the Taft–Hartley Act (Labor Management Relations Act), 29 U.S.C. § 185, alleging the Union conspired with their employer, AT & T Technologies, Inc., to create a basis for their discharge.

Cantrell and Holt were insurgents of the Appellee, International Brotherhood of Electrical Workers, Local 2021's incumbent administration (the "Union"). In 1986, they distributed anti-administration handbills to fellow employees. Appellants claim the Union retaliated against them by instigating a "campaign of harassment." In addition to pre-grievance complaints, Cantrell alleges the Union failed to process his 1987 grievance and delayed arbitration of his claim. Holt charges he was suspended due to the selective and discriminatory enforcement of a rule against the unauthorized distribution of literature in work areas. Further, Holt states the Union coerced him into accepting a settlement, which provided he would be rehired without compensation for his twenty day suspension. There are two issues on appeal: (1) whether Appellants' claims of harassment and retaliation are time barred, and (2) whether Appellants are entitled to emotional distress damages.

## I. *Statute of Limitations.*

Appellants contend the district court erred in its conclusion that several of their claims were not raised before the limitations period expired. The district court held the statute of limitations for these fair representation claims is six months and all pre-grievance complaints are thereby barred. The *de novo* standard of review applies to a summary judgment order. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Barnson v. United States,* 816 F.2d 549, 552 (10th

sitting by designation.

Cir.1987), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)).

Appellants argue the limitations period on all claims should be two years. There is no explicit limitations period in § 301 of the Taft–Hartley Act, 129 U.S.C. s. 185. Noting this, the Supreme Court has applied the six-month limitations period for unfair labor practice suits to duty of fair representation suits. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). Appellants declare their case is an unusual one and urge us to apply a different limitations period.

Appellants contend their cause is comparable to one to protect a member's rights under § 101 of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411 ("LMRDA"). The Supreme Court has held the state statute of limitations for personal injuries determines the limitations period for § 101 claims. *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). The Oklahoma statute of limitations for personal injuries is two years. Okla.Stat.Ann. tit. 12, § 95 (West 1988). Therefore, Appellants postulate the limitations period on their claims of harassment for political activity is two years.

Appellees assert discrimination through an employer is not a violation of the LMRDA and the LMRDA statute of limitations does not apply. They cite *Breininger v. Sheet Metal Workers International*, 493 U.S. 67, 94, 110 S.Ct. 424, 440, 107 L.Ed.2d 388 (1989) for the proposition that any proceeding not convened by the Union cannot give rise to a LMRDA violation. They also rely on *Clift v. International Union, UAW*, 881 F.2d 408, 410 n. 1 (7th Cir.1989), where the court applied the six-month limitations period to a fair representation claim even though the plaintiff also alleged violations of the LMRDA. *See also Turco v. Local Lodge 5, Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO*, 592 F.Supp. 1293, 1294 (E.D.N.Y. 1984) (six-month limitations period applies to a claim of retaliation based on defendant's failure to refer jobs to union insurgents).

■ Uniformity and predictability suggest all unfair representation claims should be governed by the same statute of limitations. In *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2293, the Court recognized the need for uniformity when it held fair representation claims would no longer be governed by the limitations periods from analogous state law claims, but rather by a six-month statute of limitations.

The Court in *DelCostello* noted that many fair representation claims would result from "political activity":

> Even if not all breaches of the duty are unfair labor practices, however, the family resemblance is undeniable, and indeed there is a substantial overlap. Many fair representation claims ... include allegations of discrimination based on membership status or dissident views, which would be unfair labor practices under § 8(b)(1) or (2). Aside from these clear cases, duty of fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions—as are virtually all unfair labor practice charges made by workers against unions.

*Id.* at 170, 103 S.Ct. at 2293. These remarks indicate the Court contemplated claims, such as the present one, which allege unfair representation as a result of animosity between the incumbent administration and the union member. We therefore conclude the six-month statute of limitations period applies to Appellants' fair representation claim.

■ Cantrell argues his claim arising out of his 1986 grievance should not be barred because he could not reasonably have known that the Union refused to process that grievance. According to Cantrell, he did not learn that the Union had done so until October, 1988 when he sent a letter demanding to know the status of his claim. However, Cantrell's diary and deposition show on November 30th, 1987, the Union's president told Cantrell he believed the 1986 grievance may have been dropped.

■ The district court determined this belief put Cantrell on notice. We agree. Fair representation suits accrue when the claimant discovers, or should have discovered, the acts constituting the alleged violation. *Vadi-*

no v. A. Valey Engineers, 903 F.2d 253, 260 (9th Cir.1990). As a result, even if Cantrell's 1986 grievance was tolled, such tolling ended by November, 1987. Moreover, Cantrell's complaint did not state any claim regarding his 1986 suspension or grievance, nor did he seek leave to amend.

Finally, Appellants claim the Union subjected them to continuing harassment and retaliation. They contend every new violation establishes a new limitations period and therefore conduct before the 1987 grievance is admissible as a continuing violation.

■ Although events outside of the limitations period may be used to "shed light on the true character of matters occurring within the limitations period," such events cannot form the basis for a separate cause of action. Local Lodge 1424, Int'l Ass'n of Machinists v. NLRB, 362 U.S. 411, 416–17, 80 S.Ct. 822, 826–827, 4 L.Ed.2d 832 (1960). Appellants have failed to submit evidence of harassment occurring within the six-month limitations period. Therefore, events outside of the limitations period have no focal point on which to shed light.

## II. Emotional Distress Damages.

■ Appellants also contend the district court erred in granting summary judgment on the claim of damages resulting from emotional distress. The district court held proof of extreme misconduct is required to recover damages for emotional distress. Appellants argue a finding of "extreme misconduct" is not necessary, alternatively, if it is, they claim they have established such extreme misconduct.

■ Where Congress has not specified available remedies, the federal courts must fashion them. Teamsters v. Lucas Flour, 369 U.S. 95, 104, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). Congress has not specified what remedies are available in unfair representation suits. IBEW v. Foust, 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979). The Supreme Court has held "the fundamental purpose of unfair representation suits is to compensate for injuries caused by violations of employee rights." Id. at 48–49, 99 S.Ct. at 2125–2126. However, as the First

Circuit has determined, emotional distress damages should be awarded in fair representation suits only in "exceptional cases of extreme misconduct." Soto Segarra v. Sea–Land Service, Inc., 581 F.2d 291, 298 (1st Cir.1978). See also Anspach v. Tomkins Industries, Inc., 817 F.Supp. 1499, 1516 (D.Kan.1993) (the union's conduct must be "outrageous" before the plaintiff may recover damages for emotional distress); Baskin v. Hawley, 807 F.2d 1120, 1133 (2nd Cir.1986) (factfinder must find "truly outrageous" conduct).

A policy that protects unions from large and somewhat mantological awards serves both unions and their members. The Court in Foust found punitive damages are "unpredictable and potentially substantial" and "community hostility towards unions ... can thus find expression in punitive awards." 442 U.S. at 51, 99 S.Ct. at 2127. The same concerns circumscribe emotional distress awards.

Courts have found extreme and outrageous misconduct only in exceptional circumstances, such as where the plaintiff was subjected to "constant chanting, jeering, and gesturing, a daily rain of nuts, bolts, and screws, intentional cigarette burns, vandalism of cars and lockers and vulgarities about his wife." Bloom v. Int'l Bhd. of Teamsters, Local 468, 752 F.2d 1312, 1315 (9th Cir.1984) (quoting Richardson v. Communications Workers of America, 443 F.2d 974, 983 n. 12 (8th Cir.1971)). The court in Bloom did not reach the question whether emotional distress damages were available in a fair representation suit. Instead, the court found, even if emotional distress damages would be available, a finding of outrageous misconduct is necessary for such an award and the plaintiff failed to establish sufficient evidence of misconduct. Bloom, 752 F.2d at 1314.

Other courts have held damages for emotional distress may be awarded in fair representation cases. See Anspach v. Tomkins Industries, Inc., 817 F.Supp. 1499, 1515 (D.Kan.1993). See also Baskin v. Hawley, 807 F.2d 1120, 1133 (2nd Cir.1986). Allowing such damages furthers the compensatory purpose of fair representation suits. IBEW v. Foust, 442 U.S. at 47, 99 S.Ct. at 2125.

In the instant case, the only timely claims are related to Holt's allegedly coerced settlement and Cantrell's delayed 1987 grievance. With regard to these claims, Appellants present no evidence of outrageous misconduct. In *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1380 (10th Cir.1989), we held a jury could not find outrageous misconduct from allegations of fraud and misrepresentation without a description of the surrounding circumstances. In *Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699, 703 (10th Cir. 1982), we held the "manner" of an employee's discharge, not the discharge itself, determined whether the employer acted outrageously. Coerced settlements and failures to process grievances without a particularized description of the generative circumstances presenting outrageous misconduct are insufficient.

We affirm. We deny Appellee's request for sanctions.