**Michael D. MADISON, Plaintiff,**

v.

**MOTION PICTURE SET PAINTERS AND SIGN WRITERS LOCAL 729, Defendant.**

**No. CV 99–12399 MMM AJWX.**

United States District Court, C.D. California.

March 6, 2000.

---

Bennett Rolfe, Carmichael A Smith-Low, Bennett Rolfe Law Offices, Camarillo, CA, for plaintiff.

Leo Geffner, Ira L Gottlieb, An T Le, Geffner & Bush, Burbank, CA, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

MORROW, District Judge.

This case involves claims of racial discrimination by plaintiff Michael Madison against his union, the Motion Picture Set Painters and Sign Writers Local 729 (the "Union"). Madison commenced this action in Los Angeles Superior Court on October 22, 1999, alleging causes of action for violation of the California Fair Employment & Housing Act ("FEHA") and Article I, § 8 of the California Constitution. The Union timely removed on November 30, 2000, asserting that Madison's "artfully pled" state law claims were preempted by § 301 of the Labor Management Relations Act ("LMRA") and/or the duty of fair representation.

Madison contends that the action was improperly removed and seeks to have it remanded to state court on the basis that the court lacks federal subject matter jurisdiction. He asserts that his claims are not preempted because they involve neither the interpretation of a collective bargaining agreement ("CBA")—as required for § 301 preemption—nor the duty of fair representation.

The Union opposes remand. Additionally, it seeks judgment on the pleadings, arguing that once Madison's causes of action are properly characterized as claims arising under the federal labor law, they are barred by the applicable six-month statute of limitations and fail on their merits. To the extent his claims arise under federal law, Madison asserts they are not time-barred because he has alleged a continuing violation. He also argues that he should be given leave to amend to correct any pleading deficiencies.

Madison's complaint alleges that the Union discriminated against its African–American members by negotiating a collective bargaining agreement that allows employers to "pick and choose" those Union members they wish to employ as set painters and sign writers, and thus to engage in discriminatory hiring that disparately impacts African–Americans. Additionally, he contends the Union discriminated against him by issuing a meritless grievance against Paramount Pictures, his employer, that reflected badly on him. Madison asserts that both acts violated FEHA and Article I, § 8 of the California Constitution.

Madison's claims are both preempted. To the extent he seeks to hold the Union liable for issuing a grievance, Madison's claim is preempted by § 301 of the LMRA, since resolution of the parties' respective

rights will require interpretation of the CBA between the Union and the Alliance of Motion Picture and Television Producers. To the extent Madison seeks to hold the Union liable for agreeing to hiring procedures that disparately impact African–American members, his claim is preempted by the federal duty of fair representation. Accordingly, the causes of action must be recharacterized as federal claims, and Madison's motion to remand must be denied. Viewed as claims arising under federal law, Madison's causes of action are time-barred, since he knew or should have known the facts giving rise to both claims no later than October 1998. His suit was brought more than six months later, and the Union's motion for judgment on the pleadings must thus be granted.

## I. FACTUAL BACKGROUND

Madison is an African–American male, who has been a member of the Union for several years.[1] He asserts that the Union has approximately 1,000 members, only a small percentage of whom are African–Americans.[2] Of these, Madison contends that only a portion are able to obtain steady employment due to the Union's "refusal to properly represent them by allowing business entities ... for whom they provide personnel to essentially pick and choose among the members of [the Union] ... to work as set painters and sign writers."[3] Madison asserts that this procedure allows employers to engage in "direct racial discrimination" and/or "so-called cronyism," with the result that the Union

members chosen to work are primarily Caucasian.[4]

Madison himself has worked "steadily" on "Sabrina the Teenage Witch." This television show is produced only a few months a year, however,[5] and Madison asserts that the Union's allegedly discriminatory practices have made it impossible for him to find employment during the periods "Sabrina" is not in production.[6] Additionally, he contends the Union caused him to be "identified as a racist, as a result of ... [his] having hired African–Americans [to work] on ... Sabrina...."[7] Attached to Madison's complaint is a claim he filed with the California Department of Fair Employment and Housing ("DFEH") that provides further detail concerning this allegation. The claim asserts that the Union Appointed Lot Steward, Dennis Ivanjak, told Madison, who is the Paint Foreman for "Sabrina," that he wanted him to hire Caucasians to work on his crew.[8] At the time, Madison employed only African–Americans.[9] Shortly thereafter, the Union filed a grievance against Paramount Pictures, the show's producer, which alleged that Paramount was hiring non-Union members to paint at night in violation of the CBA.[10] The Union allegedly filed this grievance without consulting Madison or asking him whether the allegations were true, and the grievance was posted publicly in Paramount's paint department.[11] Madison contends he told the Union the charge was false, but it refused to issue a retraction.[12] He asserts that at the time he filed the DFEH complaint, he was "still receiving negative comments from Union members about the grievance, including

1. Complaint, ¶ 6.

2. Id.

3. Id., ¶¶ 6, 7.

4. Id., ¶ 8.

5. Id., ¶ 10.

6. Id.

7. Id., ¶ 11.

8. Id., Ex. A.

9. Id.

10. Id.

11. Id.

12. Id.

being called a racist." [13]

Based on these facts, Madison pleads claims against the Union for violation of Article I, § 8 of the California Constitution and of FEHA. As relief, he seeks, *inter alia,* an injunction "requiring [the Union] to fairly represent its African–American members, and to negotiate with the motion picture and related industries contracts under which African–American painters and sign writers shall receive a fair portion of work[.]" [14]

## II. PLAINTIFF'S MOTION TO REMAND

### A. Subject Matter Jurisdiction

■ A suit may be removed to federal court pursuant to 28 U.S.C. § 1441(a) only if it could have been brought there originally. See *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). "Federal district courts have original federal question jurisdiction of actions 'arising under the Constitution, laws, or treaties of the United States.'" *Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368, 1371 (9th Cir.), cert. denied, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987) (quoting 28 U.S.C. § 1331). Generally, a claim "arises under" federal law only if a federal question appears on the face of plaintiff's complaint. Thus, removal jurisdiction is lacking even if defendant asserts a defense based exclusively on federal law. See *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) ("The party who brings the suit is master to decide what law he will rely upon"); *Franchise Tax Board, supra,* 463 U.S. at 27–28, 103 S.Ct. 2841 ("federal courts have jurisdiction to hear, originally or by removal, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily de-pends on resolution of a substantial question of federal law"); *id.* at 10, 103 S.Ct. 2841 ("a defendant may not remove a case to federal court unless the *plaintiff's complaint* establishes that the case 'arises under' federal law" (emphasis added)); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Hunter v. United Van Lines,* 746 F.2d 635, 641 (9th Cir.1984), cert. denied, 474 U.S. 863, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985).

■ There is, however, an exception to this "well-pleaded complaint" rule. Under the "artful pleading" doctrine, a plaintiff cannot defeat removal of a federal claim by disguising or pleading it artfully as a state claim. If the claim involved is one arising under federal law, the federal court will recharacterize the claim and uphold removal. See *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Schroeder v. Trans World Airlines, Inc.,* 702 F.2d 189, 191 (9th Cir.1983).

■ Where a state law claim is completely preempted by federal law, the "artful pleading" doctrine applies. See *Caterpillar, supra,* 482 U.S. at 393, 107 S.Ct. 2425 ("[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"); *Sullivan, supra,* 813 F.2d at 1372 ("A traditional example of the artful pleading doctrine is one in which the defendant has a federal preemption defense to a state claim and federal law provides a remedy").

### B. Section 301 Preemption

Section 301 of the LMRA establishes federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). See *Franchise Tax Board, supra,* 463 U.S. at 23, 103 S.Ct. 2841 ("The preemptive

---

**13.** *Id.*

**14.** *Id.,* ¶ 25.

force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301"). See also *Caterpillar, supra,* 482 U.S. at 393, 107 S.Ct. 2425; *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Long standing precedent dictates "that § 301 mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 404, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988); see also *id.,* n. 3 (discussing the preemptive scope of § 301).

█ To promote uniform interpretation of labor contracts, the preemptive range of § 301 has been extended beyond suits that allege violations of such contracts. See *Allis–Chalmers, supra,* 471 U.S. at 210–11, 105 S.Ct. 1904. "The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Id.* at 211, 105 S.Ct. 1904. Thus, a state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms. *Id.* at 213, 105 S.Ct. 1904 (finding that a tort claim for breach of the duty of good faith and fair dealing was preempted by § 301 because "good faith" and "fair dealing" had to be assessed with reference to the contractual obligations of the parties); *Miller v. AT & T Network Systems,* 850 F.2d 543, 545 (9th Cir.1988).

█ If, on the other hand, a claim seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract," then it is not preempt-ed. *Allis–Chalmers, supra,* 471 U.S. at 213, 105 S.Ct. 1904. See also *Miller, supra,* 850 F.2d at 545–46. Thus, if a state law cannot be waived or modified by private contract, and if the rights it creates can be enforced without resort to the particular terms, express or implied, of the labor contract, § 301 does not preempt a claim for violation of the law. *Id.* at 546. In other words, § 301 does not "grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law . . . ." *Allis–Chalmers, supra,* 471 U.S. at 212, 105 S.Ct. 1904. See also *Hayden v. Reickerd,* 957 F.2d 1506, 1509 (9th Cir.1991). Consequently, cases distinguish between state laws that require interpretation of a labor contract and those that prohibit parties from including particular terms in such a contract. *Miller, supra,* 850 F.2d at 547.

Applying these principles, *Miller* developed the following test for determining whether a state law claim is preempted under § 301:

> "[A] court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'" *Miller,* 850 F.2d at 548.

See also *Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514, 1523 (9th Cir.1995).

### 1. The FEHA Claim

### a. Does The CBA Contain Provisions That Govern The Actions Giving Rise To The FEHA Claim?

█ In assessing whether the CBA governs the actions upon which Madison's

FEHA claim is based, "it is the legal character of [that] claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (citations and footnotes omitted); *Jimeno, supra*, 66 F.3d at 1524.[15] In *Jimeno*, plaintiff alleged that his employer's refusal to accommodate his work restrictions and his subsequent termination violated the FEHA. *Id.* at 1524. The court concluded that plaintiff's prima facie discrimination case could be evaluated without respect to the collective bargaining agreement because the contract was silent regarding possible management restructuring of work assignments or other accommodation of plaintiff's physical condition. *Id.* Here, Madison alleges that both the hiring procedures included in the CBA and the Union's handling of the Paramount grievance violate FEHA and the California Constitution.[16]

#### i. The Hiring Procedures

▇▇▇ There is no doubt that the hiring procedures about which Madison complains are found in the CBA.[17] This, however, is an insufficient basis upon which to conclude that Madison's claim requires interpretation of the CBA. Neither party contests the meaning of the hiring provi-

sions. Madison does not contend, for example, that the Union or contract employers have incorrectly interpreted the agreement; rather, he asserts that the contract clearly permits or facilitates disparate treatment of African–American set painters.[18] "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require" that a state law cause of action be preempted. *Livadas, supra*, 512 U.S. at 124, 114 S.Ct. 2068. See also *Lingle, supra*, 486 U.S. at 407, 108 S.Ct. 1877 (because the "factual inquiry" as to whether employer had a non-discriminatory reason for discharging plaintiff did "not turn on the meaning of any provision of a collective-bargaining agreement," the state law claim was independent of the contract "in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement").

Following this body of Supreme Court authority, the Ninth Circuit has explicitly recognized that a claim is not preempted by § 301 if it merely requires reference to, as opposed to interpretation of, the provisions of a collective bargaining agreement. See, e.g., *Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892, 895 (9th Cir.1997); *Associated Builders & Contractors, Inc. v. Local*

---

15. The Ninth Circuit has held on several occasions that the rights created by the FEHA are non-negotiable and independent of rights under a CBA, and thus that FEHA claims are not preempted by § 301. See, e.g., *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748 (9th Cir.1993) ("As we have held previously, the rights conferred by the California Employment Act are 'defined and enforced under state law without reference to the terms of any collective bargaining agreement,'" quoting *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir.1989)). See also *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir.1990); *Jackson v. Southern California Gas. Co.*, 881 F.2d 638, 644 (9th Cir. 1989).

16. See Complaint, ¶¶ 7, 9, 11, 21.

17. Def.'s Motion for Judgment on the Pleadings, CBA Excerpts at 61–63.

18. While the Union argues to the contrary, Madison's complaint reflects his understanding that the "complete freedom of selection" clause in the contract gives producers the right to "pick and choose" among Union members. (See Complaint, ¶ 7.) Accordingly, the question is not the interpretation to be given to the provision, but whether the agreed-upon construction disparately impacts African–American members of the Union and thus violates California's anti-discrimination law.

*302 Int'l Brotherhood of Electrical Workers,* 109 F.3d 1353, 1357 (9th Cir.1997); *Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 749 (9th Cir.1993) ("Fox errs in equating 'reference' with 'interpret'"). This rule applies here. Since there is no dispute respecting the meaning of the hiring provisions, no interpretation of the CBA is required, and the answer to the first *Miller* question is no.[19] Consequently, Madison's FEHA claim based on the disparate impact of those provisions is not preempted by § 301 of the LMRA.

### ii. The Grievance Against Paramount

 The analysis with respect to the second aspect of Madison's FEHA claim is somewhat different. Madison asserts that the Union discriminated against him by filing a grievance against Paramount. To prevail on this claim, Madison must first establish a prima facie case of discrimination, i.e., that he is a member of a protected class, that he was entitled to the customary rights and advisements due union members, and that other employees with qualifications similar to his were treated more favorably, i.e., were advised when grievances were to be filed against their employers and were given an opportunity to respond before action was taken. See *Barber v. International Brotherhood of Boilermakers, etc., District Lodge No. 57,* 778 F.2d 750, 756 (11th Cir.1985) (in

case alleging that a union intentionally discriminated against the plaintiff in its referral practices, plaintiff stated a prima facie case by showing that he was the member of a protected class, that he was properly on the union's out-of-work list, and that he was not referred at the same wage rate as were white trainees).[20] Once this showing is made, the burden shifts to the Union to offer a legitimate, non-discriminatory reason for its actions. See, e.g., *Al Deschene v. Pinole Point Steel Co.,* 76 Cal.App.4th 33, 44, 90 Cal.Rptr.2d 15 (1999). Arguably, Madison's prima facie case will require resort to the CBA, since he appears to assert that the Union handled the grievance against Paramount differently than it handled other such grievances, and proof of this fact may necessitate determining whether the CBA imposed an obligation on the Union to notify interested members before proceeding with such a claim. Even if this is not the case, it is almost certain that the Union's articulated non-discriminatory reason for the action it took will require resort to the CBA.

First, since the Union's grievance concerned the employment of non-union members as set painters, CBA requirements that only Union members be hired will be implicated.[21] Additionally, since Madison alleges that the Union's grievance was dis-

19. Because the answer to the first *Miller* question is no, the court need not consider the remaining *Miller* questions—whether the state standard is sufficiently clear that it can be evaluated without considering the provisions of the CBA, and whether the state has shown an intent not to allow the standard to be waived or altered by private contract.

20. While *Barber* is a Title VII case, California courts evaluating FEHA claims utilize the burden-shifting analysis employed in analyzing claims under the federal statute. See, e.g., *Schmoll v. Chapman University,* 70 Cal. App.4th 1434, 1441, n. 6, 83 Cal.Rptr.2d 426 (1999) ("Because California courts find the antidiscriminatory objectives and the overriding public policy purposes of FEHA and federal civil rights legislation to be identical, we look to federal decisions for guidance" (internal quotations omitted)); *Sada v. Robert*

*F. Kennedy Medical Center,* 56 Cal.App.4th 138, 148, 65 Cal.Rptr.2d 112 (1997) ("In determining the propriety of summary judgment on a discrimination claim under the FEHA, we look to the test formulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, ... and *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, ... for evaluating claims under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.)").

21. See, e.g., Def.'s Motion for Judgment on the Pleadings, CBA Excerpts at 22 (requiring that the Union notify non-Union employees of the Union membership requirement of the CBA and that it thereafter notify the producer and provide a three-day period within which any membership deficiency can be cured).

**1254**

criminatory in part because it was issued, contrary to standard practice, without alerting him first,[22] the Union will undoubtedly assert that it complied with the procedures set forth in the CBA for filing grievances against an employer. Consequently, the claim is preempted. See, e.g., *Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir.1999) ("[R]esolution of the [state] discrimination and retaliation claim turns on defendants' offer of a 'legitimate nondiscriminatory reason' requiring interpretation of the collective bargaining agreement.... Accordingly, this claim is preempted."). See also *Lingle, supra*, 486 U.S. at 407, 108 S.Ct. 1877 (examining both the prima facie elements of plaintiff's retaliatory discharge claim and the employer's potential defenses to determine if they required interpretation of the CBA); *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir.) ("HL & P will undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for Reece's treatment. When Reece then attempts to show that HL & P's stated reason is pretextual, the CBA would have to be interpreted because Reece would have to challenge HL & P's rights under the CBA"), cert. denied, 519 U.S. 864, 117 S.Ct. 171, 136 L.Ed.2d 112 (1996); *Jimeno, supra*, 66 F.3d at 1524 ("Mobil's potential defenses are also relevant to the preemption analysis").

Here, unlike the aspect of Madison's claim that challenges the hiring procedures negotiated as part of the CBA, the question is not whether unambiguous, neutral provisions of the CBA have a disparate impact on African–Americans, but whether the Union followed the CBA's procedures in filing the grievance against Paramount, and whether that grievance had merit.[23] Both questions potentially require interpretation of the CBA, and as respects this aspect of Madison's claim, the answer to the first *Miller* question is therefore yes.[24]

**b. The Remaining *Miller* Questions**

■ Because Madison's complaint respecting the Union's filing of a grievance against Paramount will require interpretation of the CBA, the court must address the remaining *Miller* questions—whether the state non-discrimination standard is sufficiently clear that it can be evaluated without considering the provisions of the CBA, and whether California has shown an intent not to allow the standard to be waived or altered by private contract. See *Miller, supra*, 850 F.2d at 548. It has long been ·held that the FEHA establishes a non-negotiable state right that is independent of the provisions of a CBA. See, e.g., *Jimeno, supra*, 66 F.3d at 1523, 1527 (holding that FEHA and the regulations promulgated under it "provide[d] a means to determine 'reasonable accommodation' without reference to the CBA"); *Ramirez, supra*, 998 F.2d at 748 ("the rights con-

---

22. Complaint, Ex. A.

23. Because the Union's legitimate, non-discriminatory reason will be "inextricably linked" with provisions in the CBA governing grievances and the employment of non-union members, the case is more like *Audette, supra*, 195 F.3d at 1113 and *Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083, 1089 (9th Cir. 1991) (finding preemption of a state law claim for infliction of emotional distress based on the union's defense that it had no duty under the CBA to represent the employee in obtaining light duty work), than cases in which no resort to the CBA was required to evaluate the conduct in which the employer or union had engaged (see n. 15, *supra* ).

24. Madison does not seriously attempt to refute defendant's contention that its defense to the Paramount grievance claim will require resort to the CBA. While he argues extensively that his claim regarding the hiring procedures negotiated by the Union is not preempted, he addresses the issue of the Paramount grievance in a single, conclusory statement: "Likewise, [the] claims against [the] Union for discrimination in reference to the posting of the grievance can be resolved without interpreting the terms of the collective bargaining agreement." (Pl.'s Reply at 7:13–15.) Madison fails, however, to explain why this is so.

ferred by the California Employment Act are 'defined and enforced under state law without reference to the terms of any collective bargaining agreement' "). In each of these cases, however, the claim of discrimination was susceptible of resolution without interpreting the provisions of the CBA. In *Jimeno*, for example, state regulations established the employer's responsibility to accommodate disabled employees by restructuring work assignments; the CBA itself was silent on the point. See *Jimeno, supra,* 66 F.3d at 1524, 1527. Similarly, in *Ramirez*, plaintiff claimed that the provisions of the CBA were being applied differently to her than to white employees. *Ramirez, supra,* 998 F.2d at 749. The court assumed there was no dispute regarding meaning of the terms, and that the issue was, thus, not interpretation of the CBA, but application of its provisions to particular employees. *Id.* In *Audette*, by contrast, the question was whether defendant's failure to perform certain terms of a settlement agreement was the product of discrimination, or of "business justification" grounded in the provisions of the CBA. See *Audette, supra,* 195 F.3d at 1111–13. Here, Madison's claim concerning the Paramount grievance is of the latter variety. The question is whether the Union followed the procedures set forth in the CBA for filing such a grievance and whether, under the provisions of the CBA, the grievance had merit. The CBA thus provides a portion of the standard against which Madison's claim must be judged, and the statutory prohibition against discrimination cannot be applied independently of the CBA. Thus, while it is clear that the FEHA imposes a *non-negotiable duty upon unions not to* discriminate, the legal test utilized to determine whether the Union's action was in fact discriminatory will necessarily involve interpretation of the CBA. Accordingly,

the court finds that the legal standard governing Madison's claim regarding the Paramount grievance is dependent on the CBA, and that the claim is preempted by § 301.[25]

### c. The Constitutional Claim

■ The parties have not cited, and the court has not found, any California or federal case analyzing LMRA preemption of a claim alleging the violation of Article I, § 8 of the California Constitution.[26] The parties appear to assume that the preemption analysis respecting this claim is identical to that utilized in connection with the FEHA claim. This appears to be true to the extent that Madison's claim concerns the Union's negotiation of the hiring procedures set forth in the CBA. The result is less clear, however, with respect to the Union's filing of the Paramount grievance, since it does not appear that the burden-shifting analysis used to evaluate claims under FEHA applies to claims under Article I, § 8. For this reason, it is possible that the Union's defense to the constitutional claim will be different than its defense to the FEHA claim, and that no interpretation of the CBA will be required.

■ The court need not resolve this question, however, because it is clear that Madison's claim respecting the Paramount grievance is not cognizable under Article I, § 8. This section is concerned primarily with the exclusion of persons from particular professions on the basis of race, sex, national origin or other prohibited classifications. Consequently, "a claim brought directly under Article I, § 8 of the California Constitution may only be brought where a plaintiff has been denied entrance into a profession or particular employment or terminated from the same." *Strother v. Southern Cal. Permanente Medical Group,* 79 F.3d 859, 871 (9th Cir.1996).

---

**25.** Because the answer to the second *Miller* question is effectively no, the court need not address the third query.

**26.** This section provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed color, or national or ethnic origin." CAL. CONST., Art. I., § 8.

See also *Himaka v. Buddhist Churches of Am.*, 919 F.Supp. 332, 335 (N.D.Cal.1995); *Simpson v. Martin, Ryan, Andrada & Lifter*, 1997 WL 542701, * 4 (N.D.Cal.1997) ("Article I, section 8, however, does not create a private cause of action to redress private employment discrimination that does not result in termination"). While the Union's filing of the Paramount grievance may have constituted differential treatment of Madison differently based on race, he remains a member of the Union and is apparently still employed by Paramount. Therefore, the Paramount grievance cannot serve as the basis for a cause of action alleging violation of Article I, § 8.

### C. Duty of Fair Representation

 Defendants also assert that Madison's claims are preempted by the duty of fair representation. Section 9(a) of the LMRA authorizes a union to act as the exclusive agent for its members in collective bargaining with the employer. See 29 U.S.C. § 159(a);[27] *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14, AFL–CIO*, 453 F.2d 1018, 1021–22 (9th Cir.1972) ("The duty of fair representation is a statutory duty implied from the grant to the union by section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), of exclusive power to represent all employees of the collective bargaining unit"). The exclusivity of the agency imposes on a union the duty "to represent all members ... without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The duty of fair representation applies to all representational activity in which the union engages, including the "negotiation, administration, and enforcement of collective bargaining agreements." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Airline Pilots Ass'n v. O'Neil*, 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). Since the duty is derived from the LMRA, it is defined solely by federal law (see *Vaca, supra*, 386 U.S. at 177, 87 S.Ct. 903) and preempts the application of state substantive law that seeks to regulate conduct within its ambit (see *Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1166–67 (5th Cir. 1989), citing *Vaca, supra*, 386 U.S. at 188, 87 S.Ct. 903).

The First Circuit has held that the duty of fair representation completely preempts state law, and thus that state law claims challenging a union's representational activities must be recharacterized under the artful pleading doctrine as arising under federal law. See, e.g., *BIW Deceived v. Local S6, Industrial Union of Marine And Shipbuilding Workers of America*, 132 F.3d 824 (1st Cir.1997). See also *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 861 (6th Cir.1988) ("Unfair representation, then, is unfair representation whether by reason of ... discrimination, or a willful breach of responsibility to carry out clear terms of a collective bargaining agreement for the benefit of union members and employees. The claims of plaintiffs under these circumstances related to a failure fairly to represent ... [and] must be deemed to be foreclosed and preempted."); *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733, 735 (6th Cir.1985) ("The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation. Whether union conduct constitutes a breach of the duty of fair representation is a question of federal law.... Regardless of the forum in which the claim is

---

**27.** Section 159(a) provides:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment...." 29 U.S.C. § 159(a).

presented, the case is controlled by federal law"). In *BIW Deceived,* the First Circuit stated:

"Because federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit, and because this manifestation of congressional will so closely parallels Congress's intentions with regard to section 301, ... a district court possesses federal question jurisdiction when a complaint, though garbed in state law raiment, sufficiently asserts a claim implicating the duty of fair representation." *BIW Deceived, supra,* 132 F.3d at 831–32 (internal quotations omitted).

Although the Ninth Circuit has not yet directly addressed the issue, several district courts have adopted and applied the First Circuit's approach. See, e.g., *Cash v. Chevron Corp.,* 162 L.R.R.M. 2892, 2894 (N.D.Cal.1999) ("State law claims are preempted whenever a plaintiff's claims invokes rights derived from a union's duty of fair representation" (internal quotations omitted)); *Bergeron v. Henderson,* 52 F.Supp.2d 149, 153 (D.Me.1999) (holding that plaintiff's sexual discrimination claim was preempted by the duty of fair representation); *Sousa v. The Stop & Shop Supermarket Co.,* 1999 WL 244643, * 1 (D.Mass.1999) (holding that plaintiff's state statutory anti-discrimination claim was preempted by the duty of fair representation because the claim presented a "colorable federal question within a field in which state law is completely preempted"(internal quotations omitted)).[28] But see *Phillips v. International Union of Operating Engineers, AFL–CIO,* 1996 WL 478689, * 4 (N.D.Cal.1996) ("the fact that the federal duty of representation is a judicial creation tends to undermine the argument that Congress intended § 9(a) to supplant state law with a federal cause of action").

To determine whether Madison's state law claims assert rights separate from those secured by the federal duty of fair representation, the court must look to the conduct at the heart of the controversy. See, e.g., *Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d 1361, 1365 (1st Cir.1995); *Bergeron, supra,* 52 F.Supp.2d at 153. Madison's factual allegations strongly suggest that his claims are preempted by the duty of fair representation. He asserts, for example, that the disparate impact of the CBA hiring procedures on African–Americans "is due to [the Union's] refusal to properly represent them"[29] and to its "failure and refusal ... to negotiate contracts with motion picture and related industries ... which ... would ... enable African–Americans to receive their fair share of work opportunities."[30]

As can be seen, the gravamen of Madison's complaint is that the Union failed to represent its African–American members adequately at the bargaining table, which led to the adoption of discriminatory hir-

---

**28.** Madison attempts to distinguish these cases by arguing that they are factually dissimilar. He contends that each involved the "interior processes of the union"—i.e., a refusal to represent a member in connection with his or her grievance against an employer—while his claim involves the "disparate impact of the terms of the [CBA]"—i.e., the Union's failure to negotiate hiring procedures that ensure equal treatment for African–Americans. (Pl.'s Reply at 5:4–5.) It is true that "[t]he vast majority of duty of fair representation claims arise in the grievance procedure context." *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir.1986). The duty, however, has never been so limited. Rather, courts

have clearly held that unions must fairly represent their members in the "negotiation, administration, and enforcement of collective bargaining agreements." *Foust, supra,* 442 U.S. at 47, 99 S.Ct. 2121. Moreover, Madison cites no authority recognizing the distinction he attempts to draw. In fact, Madison concedes that the duty of fair representation "may preempt some claims of discrimination made against unions." (Pl.'s Mot. at 5.)

**29.** Complaint, ¶ 7.

**30.** *Id.,* ¶ 9.

ing procedures.[31] There is little doubt that the Union acted in a representational capacity in negotiating the CBA. See, e.g., *Foust*, 442 U.S. at 47, 99 S.Ct. 2121; *Communications Workers of America v. Beck*, 487 U.S. 735, 743, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988) (the "jurisdiction to adjudicate fair-representation claims encompasses challenges leveled not only at a union's contract administration and enforcement efforts, but at its negotiation activities as well," citing *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953)). Indeed, despite Madison's arguments to the contrary, his complaint clearly acknowledges that the disparate impact of the hiring procedures resulted from the Union's "refusal to properly represent [African–Americans]."[32] The federal duty of fair representation prohibits a union from discriminating against any employee in fulfilling its representative functions. See, e.g., *Vaca, supra*, 386 U.S. at 190, 87 S.Ct. 903; *Bergeron, supra*, 52 F.Supp.2d at 154. Madison's state discrimination claims concerning the negotiation of the CBA hiring provisions do not seek to enforce obligations exceeding those imposed by federal law, and the claims are thus subsumed within the duty of fair representation. *Bergeron, supra*, 52 F.Supp.2d at 153.

This conclusion is reinforced by a review of the remedy Madison seeks. Madison asserts that he is "entitled to an injunction requiring [the Union] to fairly represent its African–American members, and to negotiate with the motion picture and related industries contracts under which African–American painters and sign writers shall receive a fair portion of work."[33] Because California statutes do not impose a duty of fair representation, the remedy Madison seeks is federal. See, e.g., *Golden v. Local 55 of the Int'l Association of Firefighters*, 633 F.2d 817 (9th Cir.1980) ("Plaintiffs have not cited, nor has our own research revealed any cases that suggest that the California Fair Employment Practice Act ... creates a duty of fair representation");[34] *Vaca, supra*, 386 U.S. at 187, 87 S.Ct. 903 (concluding that courts may fashion remedies for a breach of fair representation).[35]

It may seem inconsistent to conclude that Madison's claims regarding the Union's negotiation of discriminatory hiring procedures are not within the scope of § 301, but are preempted by the federal duty of fair representation. Courts have recognized, however, that the duty of fair representation is sufficiently "broad" that it may encompass claims not preempted by § 301. See, e.g., *BIW Deceived, supra*, 132 F.3d at 833 ("Even were we to assume for argument's sake that the plaintiffs' negligence claim, so recharacterized in light of section 301, does not raise a color-

---

**31.** *Id.*, ¶¶ 7, 9. By contrast, it is not clear that the Union was acting in its representational capacity in filing the Paramount grievance,. As discussed above, however, this aspect of Madison's claim is preempted by § 301 of the LMRA.

**32.** *Id.*, ¶ 7.

**33.** *Id.*, ¶ 25.

**34.** Similarly, Madison has not cited, nor did this court's independent research reveal, any cases finding that either FEHA or the Cal. Const. Art. I, § 8 imposes a duty of fair representation on an employer.

**35.** There are sound policy reasons for requiring that fair representation claims be decided pursuant to federal labor law. Disparities in

bargaining power, for example, may force a union to sign a contract with unacceptable terms. Thus, "[e]ven if the union has followed a strict nondiscriminatory policy .... and has consistently opposed any discriminatory contract provisions, it may nonetheless be vulnerable to suit if, because of its bargaining weakness, depleted strike benefits funds, fragile political support, public pressure, or other facts, it is unable to successfully bargain with an obstinate and recalcitrant employer over discrimination issues." (See J. Allota, *The Appropriate Test In Determining Union Liability In Employment Discrimination Cases*, 5 Lab. Law. 27, 48 (Winter 1989) [citing Comment, *The Union as Title VII Plaintiff: Affirmative Obligation to Litigate?*, 126 U.Pa. L.Rev. 1388, 1410 (1978)]).

able federal claim, we still would be bound to affirm the district court's denial of remand on the ground that the claim also is arguably preempted via the duty of fair representation"); *Cash, supra,* 162 L.R.R.M at 2894 (distinguishing *Ramirez*'s holding that state claims were not preempted by § 301 on the basis that the case did not "address the broad duty of fair representation"). Cf. *Retana, supra,* 453 F.2d at 1023 (finding that matters "related to the negotiation or administration of the collective bargaining agreement" were "not beyond the duty of fair representation [even though] they d[id] not involve the breach of a specific provision of the collective bargaining agreement").

Accordingly, Madison's claim respecting the Paramount grievance is preempted by § 301 of the LMRA, while his claim respecting the Union's failure to negotiate non-discriminatory hiring procedures is preempted by the duty of fair representation.

## III. DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Assuming Madison's causes of action are recharacterized as federal claims, the Union also seeks judgment on the pleadings. It argues that Madison's claims are time-barred under the six-month statute of limitations applicable to LMRA and fair representation claims. See *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

### 1. Standard Governing Motions For Judgment On the Pleadings

A motion for judgment on the pleadings is properly granted "when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.,* 132 F.3d 526, 528 (9th Cir.1997); *McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir.1996), cert. denied, 520 U.S. 1181, 117 S.Ct. 1460,

137 L.Ed.2d 564 (1997). The court should enter judgment on the pleadings only "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 12(c); *Enron, supra,* 132 F.3d at 529; *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). The motion should be denied unless it is " 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 529 (2d Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In reviewing a motion under Rule 12(c), the court's consideration is limited to the factual allegations set forth in the complaint. See *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994). The court must assume that the facts alleged by the non-moving party are true, and must construe all inferences drawn from those facts in that party's favor. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989), cert. denied, 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990). The court need not assume the truth of legal conclusions pleaded in the complaint merely because they take the form of factual allegations, however. See *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981), cert. denied, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

### 2. Madison's Claims Are Time–Barred

#### a. The Duty Of Fair Representation Claim

Having held that Madison's state law discrimination claims based on the Union's failure to represent its African–American members fairly in negotiating the CBA are preempted by the federal duty of fair representation, the court must deter-

mine whether such claims were timely filed. In *DelCostello,* plaintiffs sued their employers and unions, alleging that "the employer had breached a provision of the collective bargaining agreement, and that the union had breached its duty of fair representation by mishandling the ensuing grievance-and-arbitration proceedings." 462 U.S. at 154, 103 S.Ct. 2281. The Supreme Court was called upon to determine whether state or federal law provided the applicable statute of limitations in " § 301/ fair representation hybrid" cases. Citing the need for uniformity, it held that a six-month statute of limitations was applicable both to the § 301 and fair representation claims. *DelCostello, supra,* 462 U.S. at 171, 103 S.Ct. 2281. While this is not a hybrid case, *DelCostello's* six month statute of limitations has been applied consistently in fair representation cases lacking hybrid fact patterns. See *Cantrell v. International Brotherhood of Electrical Workers, Local 2021,* 32 F.3d 465, 467 (10th Cir.1994) ("Uniformity and predictability suggest all unfair representation claims should be governed by the same statute of limitations"). Cf. *Gould, Inc. v. Adams,* 469 U.S. 1122, 1123, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985) ("The rule adopted below departs from the policy we recently announced in *DelCostello* of having a single statute of limitations for fair representation suits" (White, J., dissenting from denial of certiorari)).

■ In a duty of fair representation case, the six-month statute of limitations begins to run "when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo, supra,* 793 F.2d at 1509. See also *Dowty v. Pioneer Rural Electric Cooperative, Inc.,* 770 F.2d 52, 56 (6th Cir.1985) (per curiam).

Madison argues that the six month statute of limitations does not bar his claim because his complaint alleges the Union's "continuing practice of allowing the employers with whom it has or may hereafter enter into a collective bargaining agreement or agreements, to discriminate against Plaintiff and other African–Americans on the basis of their race." [36] Supreme Court precedent clearly establishes, however, that the statute of limitations begins to run on challenges to facially neutral provisions in collective bargaining agreements at the time those provisions are adopted. See, e.g., *Local Lodge No. 1424 v. NLRB,* 362 U.S. 411, 423, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) (holding that continued "enforcement" of a CBA that was lawful on its face, but that had been executed unlawfully due to the Union's "lack of majority status" did not constitute a continuing violation; rather, the statute of limitations began to run on the date the CBA was executed).

■ Madison has not alleged that the hiring provisions in the CBA are discriminatory on their face, and the court's review of the procedures clearly indicates they are facially neutral.[37] Additionally, Madison's theory of a continuing violation is undermined by his filing of a DFEH complaint in October 1998. In the attachment to that complaint, Madison alleged that relatively few members of the union were African–American and that only a small percentage of the African–American members were able to achieve steady employment. Invocation of a continuing violation theory does not relieve a plaintiff of the obligation to file a lawsuit once he knows (or should know) of the discriminatory nature of the conduct about which he complains. See, e.g., *Dasgupta v. University of Wisconsin Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997); *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1415, n. 6 (10th Cir.1993) ("The continuing violation theory is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her

---

**36.** Pl.'s Opp. at 2:5–7.

**37.** Def.'s Motion for Judgment on the Pleadings, CBA Excerpts at 61–63.

rights would have been violated"). Here, it is clear that Madison knew about the allegedly discriminatory impact of the CBA's hiring provisions by at least October 1998. Since his Complaint was not filed until October 1999, it is barred by the six-month statute of limitations.

### 2. The § 301 Claim

 Madison's preempted § 301 claim is similarly governed by a six-month statute of limitations. See, e.g., *Audette, supra*, 195 F.3d at 1111 (upholding the district court's grant of summary judgment on the basis that the "six month statute of limitations governing actions under § 301 of LMRA" applied); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 236 (9th Cir. 1990) ("The district court was correct in applying a six-month statute of limitations to any of Cook's claims which were preempted by § 301"); *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531, 534 (4th Cir.1991) ("any federal claims McCormick might have had were barred by § 301's six-month statute of limitations"); *Williams v. Herman Goelitz Candy Co.*, 1994 WL 688995, * 3 (E.D.Cal.1994) ("Causes of action under the LMRA are subject to a six month statute of limitations").[38]

It is clear that Madison knew or should have known about the Union's allegedly discriminatory filing of the Paramount grievance as early as November 1997, when he had separate meetings with his employer and the Union to discuss the matter.[39] See, e.g., *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989) ("[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains"). Since more than

six months has passed since November 1997, Madison's § 301 claim is time-barred.[40]

Accordingly, all of Madison's claims must be dismissed on the basis that they are barred by the applicable statute of limitations.

### III. CONCLUSION

For the foregoing reasons, Madison's motion to remand is denied, and the Union's motion for judgment on the pleadings is granted.

### ORDER

The court having carefully considered the papers and the evidence submitted by the parties, and having heard the oral argument of counsel, the court denies plaintiff's motion to remand and grants defendant's motion for judgment on the pleadings.

---

38. As respects a § 301 claim, courts have borrowed the six month statute of limitations applicable to unfair labor practice claims brought before the NLRB. 29 U.S.C. § 160(b) ("no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board").

39. Complaint, Ex. A.

40. Because the court holds that plaintiff's claims are preempted and time-barred, the court need not address the parties arguments regarding the dismissal of the claims on their merits.