**Jeffrey M. CAHOON, Executor of the estate of John W. Cahoon, and Carla Graves Cahoon, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 261, et al., Defendants.**

**No. 3:00CV1888 (RNC).**

United States District Court, D. Connecticut.

July 18, 2001.

William R. Davis, Eugene K. Swain, Riscassi & Davis, P.C., Hartford, CT, for plaintiffs.

Peter J. Ponziani, Danahar, Tedford, Lagnese & Neal, Hartford, CT, Norman Zolot, Woodbridge, CT, William F. Corrigan, Howd & Ludorf, Hartford, CT, for International Brotherhood of Electrical Workers Local 261.

Peter J. Ponziani, Danahar, Tedford, Lagnese & Neal, Hartford, CT, Robert D. Kurnick, Sherman, Dunn, Cohen, Leifer & Yellig, PC, Washington, DC, for International Brotherhood of Electrical Workers.

Scott B. Clendaniel, Thomas Paul Chapman, Law Offices of Scott B. Clendaniel, Hartford, CT, for Metal Trades Council of New London County.

Stephen C. Embry, Eric James Land, Embry & Neusner, Groton, CT, for Richard Dorans.

William F. Corrigan, Howd & Ludorf, Hartford, CT, Matthew Shafner, O'Brien, Shafner, Stuart, Kelly & Morris, Groton, CT, Nathan Julian Shafner, Groton, CT, for Steven Alger.

## RULING AND ORDER

CHATIGNY, District Judge.

Plaintiffs, the widow and executor of the estate of John W. Cahoon, brought this action in Connecticut Superior Court alleging state law claims arising out of Cahoon's death. Plaintiffs allege that Cahoon suffered fatal injuries in a fight with defendant Richard Dorans, his union steward at Electric Boat, over a union policy of granting stewards superseniority. In addition to asserting an assault and battery claim against Dorans, plaintiffs' complaint claims that three labor organizations—the International Brotherhood of Electrical Workers ("IBEW"), IBEW Local 261 ("Local 261"), and the Metal Trades Council of New London County ("MTC") (collectively, "the unions")—are responsible for Cahoon's death because they were negligent in selecting and retaining Dorans as a steward (the "negligence claims"). Plaintiffs also claim that the unions and defendant Steven Alger, President of Local 261 at the time, are vicariously liable for Dorans' actions (the "respondeat superior claims"). Each of the eight substantive counts is accompanied by a loss of consortium claim brought by Cahoon's widow.

Defendants removed the action to federal court, basing subject matter jurisdiction on their contention that federal labor law completely preempts plaintiffs' state law claims. In denying plaintiffs' motion to remand, I ruled that the court had at least colorable jurisdiction over the action because of the complete preemption argument. All defendants except Dorans have reasserted their federal preemption defenses in the form of motions to dismiss. The unions contend that the negligence claims are completely preempted by the federal duty of fair representation (the "DFR") and that the allegations of the complaint do not make out a claim for breach of the DFR. The unions and Alger contend that the respondeat superior claims are preempted by statutory provisions that shield unions and their officers from liability for unlawful acts that were not authorized or ratified. See 29 U.S.C. § 106 (the Norris–LaGuardia Act); Conn. Gen.Stat. § 31–114 (a Connecticut analogue).

Plaintiffs contend that their negligence claims against the unions are not preempted because they fall within an exception to federal preemption that permits state law tort suits against unions when a "local interest" is at stake. On the respondeat superior claims, plaintiffs contend that

they have alleged authorization and ratification on the part of Alger. Plaintiffs have not responded to the unions' contention that the complaint does not allege authorization or ratification by the unions.

On the primary issue presented by this case, I conclude that the federal duty of fair representation completely preempts the field of duties owed by a union to collective bargaining unit members in connection with representational activities and that the selection and retention of union stewards is a representational activity within the preempted field. As a result, plaintiff's negligence claims are recharacterized as claims for breach of the duty of fair representation and are dismissed because mere negligence does not breach the DFR. I also conclude that the respondeat superior claims do not fall within the field of representational activities, are thus not completely preempted, and therefore do not present federal questions. Accordingly, those claims, along with the assault and battery claim against Dorans, are remanded.

*Background*

Before his death in early December 1998, John W. Cahoon, plaintiffs' decedent, was an employee at Electric Boat in Groton, Connecticut, where he was represented by the IBEW, Local 261, and the MTC. Steven Alger was president of Local 261 and had appointed Richard Dorans as a union steward and retained him in that position.

On and before November 30, 1998, there was tension within Local 261 over the Local's policy by which stewards would keep their jobs during layoffs, even if it meant that more senior workers would be laid off, and there was resentment over the retention of Dorans as a steward. On the evening of November 30, Cahoon and Dorans were inside the lunchroom at Electric Boat and had a verbal exchange regarding the layoff policy. After the exchange, Dorans struck Cahoon, causing injuries that resulted in Cahoon's death five days later.[1]

The negligence counts allege that the unions caused Cahoon's injuries and losses in that they

a. . . . retained Richard Dorans as a union steward, and left him in a role in which he would be likely to become engaged in disputes, although they knew, or should have known, that he was temperamental, confrontational, and/or prone to violence, and was resented by rank-and-file members of the union, thereby creating a danger to union members, including [Cahoon]; and/or

b. . . . failed to properly and adequately train [their] union stewards, including Richard Dorans, in how to properly conduct themselves and defuse conflict with their fellow workers and union members; and/or

c. . . . knew, or in the exercise of reasonable care should have known, of the dangerous and violent propensities of Richard Dorans, yet [they] failed to warn fellow employees and/or union members, including [Cahoon]; and/or

---

1. The complaint offers varying descriptions of the fatal blows. The negligence counts state only that Dorans struck Cahoon. The assault and battery count against Dorans states that Dorans' actions were willful, wanton and malicious, *see* Ct. 7, ¶ 5, and this characterization is incorporated by reference into the respondeat superior count against Alger, *see* Ct. 9, ¶ 1. The respondeat superior counts against the unions allege that Dorans "carelessly and negligently caused, allowed or permitted his hands to come into contact with the decedent's face and/or body." *E.g.,* Ct. 11, ¶ 4.

d.... knew, or in the exercise of reasonable care should have known, of the dangerous and violent propensities of Richard Dorans, and of hostility between him and rank-and-file union members, yet [they] failed to take proper and adequate steps to remove him from the position of union steward.

*E.g.*, Ct. 1, ¶ 7. The respondeat superior count against Alger claims that he is liable pursuant to Conn.Gen.Stat. § 31–114, *see* Ct. 9, ¶ 14; the parallel counts against the unions state only that at the time of the fight, Dorans was acting as an agent, servant, employee and/or official of each union. *E.g.*, Ct. 11, ¶ 10.

### Discussion

█ The principal legal issue presented by the motions to dismiss is whether the duty of fair representation imposed on unions by federal law completely preempts plaintiffs' state law claims. If it does, the claims must be recharacterized as federal claims for breach of the duty of fair representation and evaluated against the requirements for such claims. If it does not, this court lacks subject matter jurisdiction and must remand the action to the Superior Court, where defendants can assert preemption defenses.

Complete preemption is more a doctrine relating to removal jurisdiction than a doctrine of substantive preemption of state law by federal law. As the Second Circuit has explained:

An action which was originally filed in state court may be removed by a defendant to federal court only if the case could have been originally filed in federal court. 28 U.S.C. § 1441(a). Aside from diversity of citizenship jurisdiction, a case may be filed in federal court only if a federal question appears on the face of the plaintiff's "well-pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 [107 S.Ct. 2425, 96 L.Ed.2d 318] (1987). Therefore, if a complaint alleges only state law based causes of action, it cannot be removed from state court to federal court even if there is a federal defense. *Id.* at 392–93, 107 S.Ct. 2425. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392 [107 S.Ct. 2425].

Federal preemption is a defense, and therefore, the general rule is that even if a state law based cause of action is preempted by federal law, the case cannot be removed. *Id.* at 392–93 [107 S.Ct. 2425]. However, under the "complete pre-emption" doctrine, the Supreme Court has held that "[o]n occasion ... the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 393 [107 S.Ct. 2425] (quotations omitted). When federal law has completely preempted state law, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law" and is removable. *Id.*

*Hernandez v. Conriv Realty Associates,* 116 F.3d 35, 38 (2d Cir.1997) (footnote and parallel citations omitted). By virtue of the complete preemption doctrine, the well-pleaded complaint rule remains intact because the state law claims are recharacterized as claims brought under the relevant federal cause of action. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

The complete preemption doctrine was developed in the context of § 301 of the

National Labor Relations Act ("NLRA"), 29 U.S.C. § 185. *See Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Section 301 preemption applies to state law claims whose resolution requires interpretation of a collective bargaining agreement. *See Hernandez*, 116 F.3d at 38–39. Beyond § 301, the Court has recognized complete preemption only under § 502 of ERISA, *see Taylor*, and certain tribal land claims, *see Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 667, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

The DFR is related to and complements NLRA § 301, but it provides a separate cause of action and has a different focus. It is a judicially implied duty that arises from NLRA § 9(a)'s grant to a union of exclusive power to represent all employees in a particular bargaining unit. *See Breininger v. Sheet Metal Workers Int'l Assoc. Local Union No. 6*, 493 U.S. 67, 86–87, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989) (citing 29 U.S.C. § 159(a)). Drawing on fiduciary principles, the Supreme Court has determined that Congress would not have granted such exclusivity without intending to impose on the union a duty "to serve the interest of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*Vaca v. Sipes*, 386 U.S. 171, 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also Del-Costello v. Teamsters*, 462 U.S. 151, 164 n. 14, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

The only two courts of appeals that have directly addressed the question have concluded that the DFR effects the same complete preemption as § 301. *See BIW Deceived v. Local S6*, 132 F.3d 824 (1st Cir. 1997); *Richardson v. United Steelworkers*, 864 F.2d 1162 (5th Cir.1989). At least a few district courts have come to the same conclusion. *See, e.g., Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F.Supp.2d 1244 (C.D.Cal. 2000) (citing cases).[2] For the First Circuit, "the answer seem[ed] obvious."

> Because federal law completely governs the duties owed by an exclusive collective bargaining representative to those within the bargaining unit, and because this manifestation of congressional will so closely parallels Congress's intentions with regard to section 301, we hold that a district court possesses federal question jurisdiction when a complaint, though garbed in state law raiment, sufficiently asserts a claim implicating the duty of fair representation. We also hold, as a logical corollary, that DFR preemption warrants resort to the artful pleading doctrine.

*BIW Deceived*, 132 F.3d at 831–32 (citations omitted). *See also Richardson*, 864 F.2d at 1169–70 ("We cannot conceive that Congress intended complete displacive

---

**2.** It bears noting that the question whether the DFR preempts a field of activity and closes it to state regulation under substantive preemption principles, *see English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), is different from whether the DFR effects complete preemption so as to convert the preempted state law claims into federal claims and make them removable. The goal of complete preemption analysis is "to determine whether there exists a congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal cause of action." 14B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3722.1 at 553. For this reason, cases finding that the DFR preempts the field of duties owed by a union acting in its representational capacity are not direct authority for the proposition that the DFR effects complete preemption.

preemption of the *Avco* variety in the § 301 context, but not in the context of the duty of fair representation . . . .").[3] I agree that the federal duty of fair representation completely preempts state law causes of action arising within its field and makes them removable to federal court.[4]

*Plaintiffs' Negligence Claims Fall Within Preempted Field*

■ Having concluded that the DFR effects complete preemption, the question is whether any of plaintiffs' claims are within the field preempted by the DFR. *Cf. BIW Deceived*, 132 F.3d at 830 ("Though section 301 is omnipotent within its sphere, it is not endlessly expansive."). In determining whether a claim is within the scope of a preempted field, "[i]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." *Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *see also Madison*, 132 F.Supp.2d at 1257 (noting that "the Court must look at the conduct at the heart of the controversy").

The Supreme Court has stated that the DFR applies to "the negotiation, administration and enforcement of collective-bargaining agreements," *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), as well as other instances of the union acting

---

**3.** These courts have distinguished between complete preemption by § 301 and complete preemption by the DFR, which appears to be the correct analysis because the provisions are separate causes of action, *see United Steelworkers v. Rawson*, 495 U.S. 362, 372–74, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990); *DelCostello*, 462 U.S. at 164, 103 S.Ct. 2281, and they close different fields to state regulation. Several other courts, some cited by defendants, have held that DFR-related claims are completely preempted through § 301. *See, e.g., In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local No. 173*, 983 F.2d 725, 728 (6th Cir.1993); *Maynard v. Revere Copper Products, Inc.*, 773 F.2d 733, 734 (6th Cir.1985); *Wilhelm v. Sunrise Northeast, Inc.*, 923 F.Supp. 330, 336–37 (D.Conn. 1995); *Hess v. B & B Plastics Div.*, 862 F.Supp. 31 (W.D.N.Y.1994); *Jeltsch v. UPS*, 1988 WL 3440, *3 (S.D.N.Y.1988). A leading commentator has noted that DFR preemption "much resembles, and is sometimes confused with, the analytically distinct issue" of § 301 preemption. 2 Patrick Hardin, *The Developing Labor Law* 1721 (3d ed.1992). It appears that cases failing to distinguish between the two lines of preemption are not direct authority for the proposition that the DFR effects complete preemption and, accordingly, I do not rely on them here.

**4.** One district court has held the DFR does not give rise to complete preemption. *See Phillips v. Int'l Union of Operating Eng'rs*, No.

C–96–0363–VRW, 1996 WL 478689 (N.D.Cal. Aug.7, 1996). That court focused on the holding of *Taylor* (as cited by the Ninth Circuit) that limits complete preemption to circumstances where "Congress has clearly manifested an intent" to make actions removable. *See Taylor*, 481 U.S. at 66, 107 S.Ct. 1542. The *Phillips* court was not surprised to find a lack of evidence of the intended effect of the DFR because the duty was not expressly enacted by Congress. The Second Circuit has recognized that *Taylor* "sharply circumscribe[s]" the availability of complete preemption, *see Marcus v. AT & T*, 138 F.3d 46, 54 (2d Cir.1998), and, were the DFR inferred from any statute other than the NLRA, *Taylor* and *Marcus* would suggest a conclusion of no complete preemption. However, *Taylor* in no way cut back on *Avco* and *Franchise Tax Board* as applied to the NLRA, even though the Court in those earlier rulings did not identify specific indicia of Congressional intent. *See Richardson*, 864 F.2d at 1169 ("*Taylor* . . . did not purport to define the scope of *Avco* in instances of preemption by the NLRA."). Moreover, it would be anomalous to have a different result under two closely related provisions of federal labor law, each of which is designed to protect the substantial federal interest in the collective bargaining relationships created by the NLRA. Finally, in cases involving both § 301 and the DFR, the Court has given no indication of any difference in the preemptive effect of the two causes of action. *See, e.g., Rawson*.

in its representational role, such as operating a hiring hall, *see ALPA v. O'Neill*, 499 U.S. 65, 77, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991) (citing *Breininger v. Sheet Metal Workers*, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989)). *Breininger* stands for the proposition that the DFR applies when a union's actions are authorized "[o]nly because of its status as a Board-certified bargaining representative and by virtue of the power granted to it by the collective-bargaining agreement." 493 U.S. at 87–88, 110 S.Ct. 424.

Courts finding that the DFR effects complete preemption have described the scope of the preempted field as including all representational conduct. *See BIW Deceived* at 833 (finding complete preemption where union acted in a "representational capacity"); *Richardson*, 864 F.2d at 1169 (holding that the DFR establishes duties owed by exclusive bargaining agent to the employees it represents); *Madison*, 132 F.Supp.2d at 1256 (noting that the DFR "applies to all representational activity in which the union engages"). Defining the preempted field in terms of "representational activity" is in keeping with the origins of the duty in the NLRA's designation of unions as the exclusive representative of employees. In the case first recognizing

the DFR, the Court explained that the duty was necessarily implied by the grant of exclusivity because "the exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf." *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 202, 65 S.Ct. 226, 89 L.Ed. 173 (1944).[5]

Against this background, there can be little doubt that the unions' alleged conduct underlying the negligence claims is representational. The conduct is not Dorans' alleged striking of Cahoon but rather the unions' actions in retaining, training, not removing, and choosing not to warn about Dorans as a steward. While these actions do not themselves involve direct representation of employees to the employer, they are essential to the unions' fulfilling their representational role, for a steward is "[a] union official who represents other union employees in grievances with management and who oversees the carrying out of the union contract." *Black's Law Dictionary* 1414 (6th ed.1990).[6]

*The Negligence Claims Fail as Claims for Breach of the DFR*

 Recharacterizing plaintiffs' negligence claims as claims for breach of the

---

**5.** At the same time, the DFR does not encompass all relations between a union and its members. For example, a union's regulation of its own internal affairs is not subject to the DFR. *See Kolinske v. Lubbers*, 712 F.2d 471 (D.C.Cir.1983) (determination of eligibility for strike benefits not subject to the DFR because it lacks a substantial impact on the employee's relationship with the employer); *Hovan v. Carpenters*, 704 F.2d 641 (1st Cir. 1983) (the DFR does not apply to union's rejection of a membership application); *Bass v. Int'l Bhd. of Boilermakers*, 630 F.2d 1058, 1062 (5th Cir.1980) (holding that the DFR does not apply when union conduct "affects only an individual's relationship within the union structure"); *cf. Int'l Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 620, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958) ("[P]rotection of

union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by federal law.").

**6.** Perhaps because the pending motions are to dismiss and not for summary judgment, the record contains no indication of the precise function of Local 261 stewards at Electric Boat. There is, however, no indication that they do not perform the traditional role of stewards, and plaintiffs do not contest defendants' assertion that "[a] union chooses and trains stewards, and, if necessary, replaces them, so that it can adequately serve the employees that it represents." IBEW's Mem. Supp.Mot. Dismiss [doc. # 41] at 12.

duty of fair representation (as we must under the complete preemption doctrine), the allegations fail to state a claim on which relief can be granted.[7] The DFR requires that the unions represent fairly the interests of all bargaining-unit members "and is breached 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.' " *Price v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers*, 927 F.2d 88, 92 (2d Cir. 1991) (quoting *Vaca*, 386 U.S. at 190, 87 S.Ct. 903). Negligence on the part of a union does not violate the DFR. *See United Steelworkers v. Rawson*, 495 U.S. 362, 376, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

Under *Rawson*, plaintiffs' allegation that the unions were negligent in the selection, retention and training of Dorans does not suffice to allege a breach of the DFR. Accordingly, counts 1 through 6 of the complaint, which are the negligence claims against the unions and the related claims for loss of consortium, are dismissed with prejudice.[8]

*Plaintiffs' Asserted Exception to Federal Preemption Fails*

█ Plaintiffs contend that their negligence claims against the unions are not preempted by the duty of fair representation because they fall within a "clearly recognized exception to the doctrine of preemption" that permits state regulation of conduct that touches interests deeply rooted in local feeling and responsibility. *See* Pls.' Mem.Opp.Mot. Dismiss at 5. In support, plaintiffs point to several Supreme Court cases permitting common law tort claims to go forward against unions. Plaintiffs' position is unavailing.

First, the "local interest" cases do not apply to substantive preemption under the DFR but rather carve out an exception to so-called "*Garmon* preemption." Named after a leading case, *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the latter doctrine establishes jurisdiction in the National Labor Relations Board ("NLRB"), to the exclusion of both state and federal courts, for claims based on activity that is either arguably protected by § 7 or prohibited by § 8 of the NLRA.[9]

---

7. There is perhaps some superficial unfairness in concluding that plaintiffs have failed to state a claim they never intended to bring, but such is the effect of complete preemption. *See, e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (claim dependent on meaning of CBA "must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law") (citation omitted); *Plumbing Indus. Bd. v. E.W. Howell Co.*, 126 F.3d 61, 69 (2d Cir.1997) ("A suit need not be a cognizable, winning claim under [ERISA] § 502(a) in order to fall 'within the scope' of the provision for purposes of the jurisdiction analysis.")

8. Defendants also contend that the recharacterized claims are barred by the six-month statute of limitation that applies to claims for breach of the duty of fair representation. *See DelCostello*, 462 U.S. 151, 103 S.Ct. 2281, 76

L.Ed.2d 476 (1983); *Eatz v. DME Unit of Local Union # 3*, 794 F.2d 29, 33 (2d Cir. 1986). It is clear that plaintiffs filed their action more than six months after Cahoon died. However, because the statute of limitations is an affirmative defense that plaintiffs need not anticipate and refute in their complaint, *see Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir.1999), and because plaintiffs have expressly requested the opportunity to brief potential tolling issues, I do not rely on the statute of limitations in dismissing the negligence counts.

9. Duty of fair representation claims as a class are excepted from *Garmon* preemption, even though a breach of the DFR is arguably an unfair labor practice that would otherwise be subject to the *Garmon* doctrine, *see Breininger*, 493 U.S. at 74–75, 110 S.Ct. 424; *Vaca*, 386 U.S. at 176–77, 87 S.Ct. 903.

The Supreme Court has cautioned that "care must be taken to distinguish preemption based on federal protection of the conduct in question from that based predominantly on the primary jurisdiction of the [NLRB]." *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383 n. 19, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969) (citations omitted). The local interest exception requires a court to balance federal versus state interests. *See Farmer v. United Bhd. of Carpenters & Joiners*, 430 U.S. 290, 296–98, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). However, "[w]here, as here, the issue is one of asserted substantive conflict with a federal enactment, then '[t]he relative importance to the State of its own law is not material … for the Framers of Our Constitution provided that the federal law must prevail.'" *Brown v. Hotel and Rest. Employees Local 54*, 468 U.S. 491, 503, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962)).

Second, even if the local interest exception applied in cases of substantive preemption, it has been developed in cases involving threats of violence, breach of peace, intentional infliction of emotional distress, and libel. Plaintiffs' claims in this case do not allege any such misconduct. Rather, they are based on the unions' actions in selecting, training and retaining stewards. It cannot be said that the State's concern with [such actions] is "so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon.*" *Linn v. United Plant Guard Workers*, 383 U.S. 53, 62, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).

### The Respondeat Superior Claims Do Not Present Federal Questions

■■■ As noted, plaintiffs have also brought claims in the nature of respondeat superior against the unions and defendant Alger, seeking to hold them responsible for the allegedly negligent actions of Dorans that caused Cahoon's death. It is fairly clear from the papers that the unions do not contend that these vicarious liability claims are preempted by the duty of fair representation. Rather, the defense to these claims is based on preemption by the Norris–LaGuardia Act, 29 U.S.C. § 106, and its Connecticut analogue, Conn.Gen.Stat. § 31–114. These statutes protect unions and their officers from liability for the unlawful acts of members or (other) officers unless the union or officers participated in or authorized the acts, or ratified the acts after learning of them. No defendant suggests that the Norris–LaGuardia Act works complete preemption, and thus the preemption defense to these claims does not yield a federal question and the court does not have independent subject matter jurisdiction over them. Having dismissed the negligence claims (which, after recharacterization, are the only federal claims in the case), the Court declines to exercise supplemental jurisdiction over the remaining claims.[10]

10. To the extent the union defendants do contend that the respondeat superior claims are preempted by the DFR, their argument is rejected. As noted, the Court is directed to look to the underlying activity to determine whether a claim is within the preempted field. The activity underlying the vicarious liability claims is Dorans' "carelessly and negligently caus[ing], allow[ing] or permitt[ing] his hands to come into contact with the decedent's face and/or body," causing injuries that ultimately resulted in Cahoon's death. This activity cannot fairly be construed as representational, and thus the DFR is not implicated. Whether Connecticut law principles of respondeat superior make the defendants liable for the alleged actions, and the preemptive effect of the Norris–LaGuardia Act and C.G.S. § 31–114, are questions left for the state court to decide.

*Conclusion*

In accordance with the foregoing, the negligence claims (counts 1–6) are dismissed with prejudice and the respondeat superior claims and the assault and battery claim (counts 7–16) are remanded to the Superior Court for the Judicial District of New London.

So ordered.

It is similarly clear that the MTC, which invokes NLRA § 301 preemption in challenging the negligence claims, does not contend that the vicarious liability claim against it is preempted by § 301. To the extent it does assert § 301 preemption as to this claim, the argument is rejected. Vicarious liability on the part of the unions derives, if at all, from their status, not from something they agreed to in the CBA. The MTC has not attempted to establish what part of the CBA must be interpreted to resolve the vicarious liability claim against it. Even if the CBA must be referred to in order to determine whether Dorans was acting in his capacity as steward at the time of the alleged altercation, " 'the bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished.' " *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 233 (2d Cir.1997) (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)).